**Phillip E. BRIDWELL, Appellant,**

**v.**

**The STATE of Texas, Appellee.**

**Nos. 1359–88, 1360–88.**

Court of Criminal Appeals of Texas, En Banc.

Feb. 27, 1991.

---

George R. Milner, on appeal only, Dallas, for appellant.

John Vance, Dist. Atty., Anne B. Wetherholt, Mark Danielson and Walter Johnson, Asst. Dist. Attys., Dallas, Robert Huttash, State's Atty., Austin, for the State.

## OPINION ON APPELLANT'S PETITION FOR DISCRETIONARY REVIEW

CAMPBELL, Judge.

Appellant was found guilty of two fraud violations of the Texas Securities Act,[1] TEX.REV.CIV.STAT. art. 581–29(C)(1) (Supp.1988). The jury assessed punishment at two twenty-year sentences, to run consecutively. The Fifth Court of Appeals affirmed appellant's conviction. *Bridwell v. State*, 761 S.W.2d 401 (Tex.App.—Dallas 1988). We granted appellant's petition for discretionary review, pursuant to TEX.R. APP.P. 200(c)(2), in order to determine whether the evidence was sufficient to show fraud as charged in the indictment; whether the indictment fails to state the offense of fraud under the Texas Securities Act[2]; whether appellant was required to reveal information concerning his dealings

---

1. Commonly known as the Texas Blue Sky law.

2. See Appendix.

with prior investors in violation of the privilege against self-incrimination under the United States and Texas Constitutions; and whether articles 581–29(C) and 581–4(F) of the Texas Securities Act are unconstitutional as applied, because they violate appellant's privilege against self-incrimination under the United States and Texas Constitutions. We will affirm the judgment of the court of appeals.

Appellant was charged with five counts of fraud, and convicted of two counts of fraud under article 581–29(C)(1), *supra*, for failing to disclose his prior fraudulent dealings to James L. Purdy and W.E. Vaughan, investors in his drilling ventures. Testimony at trial revealed that Loretta Lowe first met appellant, Phillip E. Bridwell, through a mutual friend in Dallas in the spring of 1981. He told her that he was from the famous Bridwell oil family of Wichita Falls. He took her to the Bridwell Library at Southern Methodist University and told her that he was a major contributor and grandson of the founder, Joseph Bridwell. Lowe testified that appellant told her of his deep religious beliefs and Christian commitment, and of his involvement in the oil business, through his family interests. Following a divorce and move, Lowe next encountered appellant at her church in Houston in 1982.

In early 1983, appellant first approached Lowe as a prospective investor for a drilling venture. He told her that he and his cousin, Joe B. Hood, had been "hitting a lot of wells." He sent her plats and information on the venture agreement. In April and May, Lowe and her father invested over $100,000 with appellant in the venture. Appellant was to drill two wells on a specific lease in Archer County, Texas. Appellant deposited the Lowes' funds into his personal bank accounts, and used the funds to pay outstanding debts and personal expenses. Appellant told Lowe that the two wells had been unproductive. Lowe demanded to know more. When appellant failed to produce the information requested, Lowe called Hood and found that he and appellant had never acquired the Archer County lease, although they had briefly held an option on it. Appellant eventually sent Lowe Railroad Commission reports, and some expense receipts, later determined to be fakes. Lowe testified that she and her father had "initiated legal proceedings" against appellant and Hood about two and one-half years prior to the trial in the instant cause.

James L. Purdy met appellant in July of 1983 through appellant's then fiancee, Kathryn Payne. Appellant told Purdy that he was successful in the oil business with his cousin Hood, and that he could make money for Purdy. Appellant offered Purdy a chance to get involved in drilling Well No. 1 on the Patton lease. In October and December 1983, Purdy borrowed $100,000 and invested it with appellant. Certified copies of Railroad Commission reports demonstrated that Patton Well No. 1 had already been drilled and plugged as a dry hole at the time of Purdy's investment. Appellant deposited Purdy's funds into personal bank accounts and used the funds for personal expenses. Purdy testified that appellant never disclosed his prior dealings with Lowe, and that had he known of appellant's prior dealings with Lowe, he would not have "ever gotten involved with anything to do with him [appellant]."

W.E. Vaughan met appellant through his son in late 1983. Appellant told him that he had "a for-sure lease." Vaughan invested almost $250,000 in April, May and June of 1984 in appellant's drilling venture in exchange for a partial working interest in four wells in Wichita and Wilbarger Counties. Appellant showed Vaughan two wells and told Vaughan that the wells were producing and the tract was worth $4,457,000. When Vaughan failed to get any money in return from the wells, he asked his accountant and a geologist to investigate the problem. Their investigation revealed that there were no working wells on the lease in question. Vaughan also obtained a forged invoice from appellant purporting to show $153,000 of work done for appellant by a local drilling company in connection with one well on the lease. Vaughan's accountant testified that expenses for such a well should run between $10,000 and $20,000.

Bank records in evidence reveal that appellant deposited at least $81,000 of

Vaughan's money directly into his personal bank account and used it to pay personal expenses, including almost $30,000 in closing costs on his Highland Park home, and an $8,000 watch. Appellant also deposited some of Vaughan's funds into a business account, and used approximately $50,000 to pay off a lien on his home. As part of a settlement with appellant, Vaughan received a working interest in four other wells. Vaughan testified that appellant never disclosed his prior dealings with Lowe or Purdy, and that he considered the Purdy deal to be a material fact. Vaughan testified that he would not have invested with appellant, if he had known about his prior dealings with Purdy and Lowe.

In his first and second grounds for review, appellant argues that the evidence is insufficient because there is no evidence that what he was charged with doing is fraud within the meaning of articles 581–29(C)(1) and 581–4(F) of the Texas Securities Act, and that the indictment(s) failed to state the offense of fraud because the facts he allegedly failed to disclose do not constitute fraud in this case. Essentially, appellant challenges the sufficiency of the evidence to show that he was guilty of fraud, and the sufficiency of the indictments to show that he was charged with an offense. Appellant contends that his prior fraudulent dealings were not material facts, and thus, disclosure was not required by the Act.

The State responds that appellant has been properly charged and convicted of fraud within the meaning of article 581–29(C)(1) and 581–4(F), in that his prior fraudulent dealings were material facts,

which he was required to disclose to his investors.

Article 581–29(C)(1) prohibits the use of fraud or fraudulent practices in connection with the sale or offer of securities. Article 581–4(F) defines "fraud" or "fraudulent practice," for purposes of the Securities Act, to include "an intentional failure to disclose a material fact."

The term "material fact" is not defined in either Texas or federal securities fraud laws and regulations. Materiality is the one common-law element still strongly viable under federal securities fraud laws.[3] Bromberg & Lowenfels, *Securities Fraud and Commodities Fraud* § 8.3 (1989). Materiality has been the subject of much discourse in connection with securities fraud and disclosure requirements. With respect to securities fraud violations under Rule 10b–5, *supra* note 2, the materiality standard has been formulated in a variety of tests.[4] Nonetheless, all of the generally accepted formulations concentrate on the importance of the misrepresentation or nondisclosure as they relate to the reasonable investor's decision whether to invest or act.

The United States Supreme Court, in construing § 14(a) of the Securities Exchange Act,[5] held that an omitted fact is material if there is a substantial likelihood that the omitted fact would have assumed actual significance in the deliberations of the reasonable shareholder. "[T]here must be a substantial likelihood that the disclosure of the omitted fact would have been viewed by the reasonable investor as having signif-

---

3. 15 U.S.C. § 78j(b) and 17 C.F.R. § 240.10b–5 (commonly known as Rule 10b–5) are the federal laws most similar to article 581–29 TEX.REV. CIV.STAT. in providing criminal penalties for fraud offenses in connection with the sale of securities.

4. See, e.g. *Vaughn v. Teledyne, Inc.,* 628 F.2d 1214 (9th Cir.1980) (The test for materiality is whether there is a substantial likelihood that a reasonable investor would consider the fact important in making an investment decision.); *Wheat v. Hall,* 535 F.2d 874, 876 (5th Cir.1976) (The test of materiality is whether a reasonable man would attach importance to the fact [omitted] in determining his course of action.); *Vohs*

*v. Dickson,* 495 F.2d 607, (5th Cir.1974) (A material fact is one which would cause a reasonable investor to have acted differently in respect to a securities transaction.); *List v. Fashion Park, Inc.,* 340 F.2d 457, 463 (2d Cir.1965) (The test for materiality is whether a reasonable man would attach importance to the fact omitted in determining his choice of action in the transaction in question.); for other definitions see *Gilbert v. Nixon,* 429 F.2d 348, 355–56 (10th Cir. 1972).

5. See 15 U.S.C. § 78n(a) and 17 C.F.R. § 240.14a–3, 240.14a–9 concerning disclosure requirements in connection with proxy solicitations of shareholders.

icantly altered the 'total mix' of information made available." *TSC Industries, Inc. v. Northway, Inc.*, 426 U.S. 438, 449, 96 S.Ct. 2126, 2132, 48 L.Ed.2d 757 (1976); see *Kirk v. State*, 611 S.W.2d 148, 151 (Tex. App.—El Paso 1981, no writ); *Huett v. State*, 672 S.W.2d 533, 540 (Tex.App.—Dallas 1984, rev. ref'd).

We find that the Supreme Court's definition of "materiality" provides the most objective standard yet applied to securities transactions, and therefore is appropriately applied to interpret "material fact" in connection with articles 581–29(C)(1) and 581–4(F). Restated, an omitted fact is material if there is a substantial likelihood that it would have assumed actual significance in the deliberations of a reasonable investor, in that it would have been viewed by the reasonable investor as significantly altering the total mix of available information used in deciding whether to invest.[6]

Applying the "substantial likelihood" test of *TSC Industries, Inc. v. Northway, Inc.* to the facts in the instant case, we find that the evidence was sufficient to support a rational jury finding beyond a reasonable doubt that appellant's failure to disclose his prior fraudulent dealings was fraud within the meaning of articles 581–29(C)(1) and 581–4(F).[7]

With the evidence viewed in the light most favorable to the verdict, we find that a jury could rationally conclude there was a "substantial likelihood" that a "reasonable investor" would want to know about appellant's prior use of investors' funds for personal purposes, and his prior use of faked documents to explain the lack of return on the investments. Such disclosure certainly would have altered the total mix of information, and affected the decision to invest. This conclusion is supported by Purdy's and Vaughan's testimony that they would not have invested with appellant if they had known of his prior fraudulent schemes in drilling ventures.

In the instant case, there was sufficient evidence to show fraud in appellant's prior dealings with Lowe and Purdy. A rational jury could conclude that appellant's failure to disclose his prior fraudulent dealings in the same type of business venture, using the same scheme to defraud, within one to two years of the instant offense, was an intentional omission of a material fact. Further, the jury could conclude that there was a substantial likelihood that a reasonable investor would want to know that appellant had, within the past eighteen months, defrauded other investors in almost identical schemes.[8]

---

6. In the instant case the jury was charged as follows:

> A material fact is one that a reasonable man would attach importance to in determining his choice of action in the transaction in question. In the terms of this case, a material fact is one that a reasonable man would deem important in determining whether or not to purchase the security.

We find that this practically comports with the "substantial likelihood" test, in that the focus is on the importance of the misrepresentation or nondisclosure to the reasonable investor.

7. Materiality is a factual issue properly submitted to the jury for determination. *James v. Gerber Products Co.*, 587 F.2d 324 (6th Cir.1978). "The issue of materiality may be characterized as a mixed question of law and fact, involving as it does the application of a legal standard to particular sets of facts." *TSC Industries, Inc. v. Northway, Inc.*, 426 U.S. at 450, 96 S.Ct. at 2132–33.

8. See *Hawkins v. State*, 656 S.W.2d 70 (Tex.Cr. App.1983) (Failure to disclose a prior conviction for securities fraud and that money would be used for other purposes were omissions of material facts under article 581–29(C)(1) and 581–4(F).); *Rose v. State*, 716 S.W.2d 162 (Tex.Cr. App.1986) cert. denied 486 U.S. 1055, 108 S.Ct. 2822, 100 L.Ed.2d 923 (Failure to disclose prior encumbrances on oil and gas properties and drilling equipment to investors was omission of a material fact under articles 581–29(C)(1) and 581–29(F).); *Huett v. State*, 672 S.W.2d 533 (Tex. App.—Dallas 1984, rev. ref'd) (Material fact in case was appellant's two prior revocations of probation received for nolo contendere pleas to second and third degree felony theft offenses.); *Morgan v. State*, 557 S.W.2d 512 (Tex.Cr.App. 1977) (The term "material fact" as used in 581–29(C)(3) which penalizes an "omi[ssion] to state a material fact, necessary in order to make the statements made, in light of the circumstances under which they are made, not misleading" is not unconstitutionally vague.).

Federal regulations provide for broad disclosure of fraudulent activities in connection with the sale or offer of securities. See 15 U.S.C. § 78j and 17 C.F.R. § 240.10b–5. See also *IIT v. Vencap, Ltd.*, 411 F.Supp. 1094, 1106 (S.D.N.Y.

Appellant primarily relies on *Russell v. French & Assoc., Inc.*, 709 S.W.2d 312 (Tex.App.—Texarkana 1986) (Failure to disclose prior consent to an agreed order of permanent injunction in an action brought against defendant by the Securities and Exchange Commission was not omission of material fact.) In *Russell*, the defendant did not admit to the allegations in the SEC complaint, and testified at trial that he had entered into the order to avoid the expense of defending the suit.

■ In the instant case, the State provided direct evidence of appellant's schemes to defraud Lowe, her father, Purdy, and Vaughan. Lowe testified that she had reached a particular agreement with appellant, but that she later discovered that appellant had not performed as planned, and had attempted to conceal his diversion of her funds to his personal use. Bank records in evidence revealed appellant's obvious pattern of depositing investors' funds in his personal accounts and using them to pay personal expenses and past indebtedness. The testimony of the other investors and the documentary evidence admitted at trial, clearly demonstrated that appellant used a very similar scheme to defraud Purdy and Vaughan.

In *Russell*, there was no evidence of prior fraudulent dealings other than the agreed order. In the instant case, the jury was presented with evidence sufficient to support a rational finding that appellant had defrauded not only the complaining investors, but also Lowe and her father.

■ Appellant further argues that the indictments in this case are insufficient to charge him with the offense of securities fraud under article 581–29(C)(1). The record does not reflect an objection to the indictment prior to trial. Objections to the substance of an indictment must be raised pre-trial. Absent a pre-trial motion to quash, appellant has forfeited his right to raise this issue on appeal. *Studer v. State*, 799 S.W.2d 263 (Tex.Cr.App.1990); TEX. CRIM.PROC.CODE, art. 1.14(b) [9]. Appellant's first and second grounds for review are overruled.

■ In his third and fourth grounds for review, appellant asserts that he was not required to reveal his prior uncharged fraudulent conduct to his investors, because it would violate his privilege against self-incrimination under the United States and Texas Constitutions. In his fifth and sixth grounds for review, appellant asserts that articles 581–29(C) and 581–4(F) are unconstitutional as applied to him, because

1975) (Failure to disclose serious financial problems and intent to use a portion of investor's funds for personal use was omission of a material fact.); *S.E.C. v. Carriba Air, Inc.*, 516 F.Supp. 120 (N.D.Ga.1980) affirmed 681 F.2d 1318 (11th Cir.1982) (Failure to disclose repeated failures in the commuter airline business over a ten year period was a material fact in connection with issue of securities to start up new airline.); *Rudolph v. Arthur Andersen & Co.*, 800 F.2d 1040 (11th Cir.1986) cert. denied 480 U.S. 946, 107 S.Ct. 1604, 94 L.Ed.2d 790 (1987) (Plaintiff's complaint was sufficient to show Rule 10b–5 violation where defendant was under duty to disclose, and did not disclose his knowledge of fraud in that funds would be used for purposes other than those intended by investors.).

In connection with proxy solicitations, disclosure of the competency and integrity of management is of direct and vital concern. Information reflecting on the integrity of management is material to investors, especially in cases involving self-dealing. Steinberg, *Securities Regulation* § 1.02 (1990); see note 4, supra; Cf. *S.E.C. v. Joseph Schlitz Co.* 452 F.Supp. 824, 830

(E.D.Wis.1978) (Management's illegal bribes should be disclosed in connection with the sale of stock.); *S.E.C. v. Kalvex, Inc.*, 425 F.Supp. 310 (S.D.N.Y.1975) (Director's prior use of funds for personal purposes was a material fact and must be disclosed.).

9. Assuming *arguendo*, that appellant preserved error and that his ground for review actually asserts that the indictment fails to state an offense under Texas law, we still find that the indictment in this case does charge an offense within article 581–29(C)(1) of the Texas Securities Act. Applying the analysis of *Studer*, the indictment in the instant case is entirely sufficient to charge a criminal offense. The language of the indictment clearly indicates that appellant is charged with fraud in connection with the sale of securities.

Further, applying the materiality standard of *TSC Industries, Inc. v. Northway, Inc.*, we find that the conduct as alleged in the indictment, if proved constitutes fraud within the meaning of article 581–29(C)(1). See notes 2–7 and accompanying text.

they violate his rights against self-incrimination under the United States and Texas Constitutions.

Appellant primarily relies on *Marchetti v. United States,* 390 U.S. 39, 88 S.Ct. 697, 19 L.Ed.2d 889 (1968); see also *Grosso v. United States,* 390 U.S. 62, 88 S.Ct. 709, 19 L.Ed.2d 906 (1968); *Leary v. United States,* 395 U.S. 6, 89 S.Ct. 1532, 23 L.Ed.2d 57 (1969). He argues that the statute was unconstitutional as applied against him, because the disclosure of his illegal conduct was compelled by the government through the statute, and the disclosure had a tendency to incriminate him, and furnish a link in the chain of prosecution. Appellant asserts that he had a constitutional right not to disclose this incriminating information.

The State responds that it may require sellers and offerors of securities to be truthful in their dealings and it (the State) may provide criminal penalties for violations. The State further argues that securities law disclosures are not sought for the purpose of obtaining incriminating evidence, and that the disclosure is not compelled within the meaning of the Fifth Amendment, because the person regulated under the statute acts voluntarily in selling securities.

In *Marchetti,* supra, the Supreme Court addressed a federal statute that imposed an excise and occupational tax on persons in the business of accepting wagers, and required persons in this business to register annually with the Internal Revenue Service. A federal wagering tax stamp was issued to persons who registered, and the stamp had to be posted in their place of business or carried on their person. This information was provided to federal and state prosecutors to enforce statutes prohibiting such activity. *Id.* at 42–48, 88 S.Ct. at 699–703. The Court found that Marchetti's proper assertion of his privilege against self-incrimination was a complete defense to the charge of conspiracy and willful failure to register as required. *Id.* at 60–61, 88 S.Ct. at 708–09. In the face of a statutory scheme, designed to identify illegal gamblers, that required him either to identify himself as such to the government for possible use in his prosecution, or to violate the registration requirement, Marchetti faced a "real and appreciable" hazard of self incrimination [10]. *Id.* at 48, 88 S.Ct. at 702.

In the instant case, appellant is not presented with a similar dilemma. First, the statutory scheme of the Texas Securities Act is not designed to isolate and identify those engaging in illegal securities practices; the purpose is to provide for full and fair disclosure to investors, and to protect the public against fraud. *Kadane v. Clark,* 143 S.W.2d 197 (Tex.1940). There is no inherent illegality in the sale of securities, as there is in unsanctioned gambling. *Marchetti, supra; Grosso, supra* note 9; *Cf. Shapiro v. United States,* 335 U.S. 1, 68 S.Ct. 1375, 92 L.Ed. 1787 (1948).

Second, appellant is not being required to divulge incriminating information to the government, merely to those whose money he seeks on the open market. He is not being required to provide a "link in the chain of evidence tending to establish his guilt." *Marchetti,* 390 U.S. at 50, 88 S.Ct. at 703–04. If he were to disclose this information to his investors, they might or might not choose to contact the government. Appellant, however, is in no way being forced to incriminate himself to those in the chain of prosecution, or in an official proceeding, formal or informal. See *Minnesota v. Murphy,* 465 U.S. 420, 104 S.Ct. 1136, 79 L.Ed.2d 409 (1984) (Privilege against self-incrimination not available to probationer questioned by probation officer. Probationer could not invoke privilege on the ground that invocation might be used against him at revocation hearing.).

Third, appellant suffers no official sanction for his invocation of the privilege at

---

**10.** See *Grosso v. United States,* 390 U.S. 62, 88 S.Ct. 709, 19 L.Ed.2d 906 (1968) (Companion case to *Marchetti,* holding that the privilege against self-incrimination may be properly asserted as a defense against the excise and occupational tax portions of the statute.); *Leary v. United States,* 395 U.S. 6, 89 S.Ct. 1532, 23 L.Ed.2d 57 (1969) (Concerning the marijuana transfer tax.).

any point. He may properly invoke his privilege in front of his investors, and suffer no penalty other than the probable loss of the use of their funds. Appellant has no inherent right to obtain investors' funds or engage in the sale of securities; he may choose to do neither.

Thus, we find nothing in the statutory scheme of the Texas Securities Act that compares to the compulsory nature of the federal scheme in *Marchetti*. Appellant was not improperly compelled to incriminate himself for purposes of prosecution. On the facts of the instant case, we find no compelling reason to interpret article I § 10 of the Texas Constitution as affording greater protection to appellant than the Fifth Amendment of the United States Constitution. Appellant's third, fourth, fifth, and sixth grounds for review are overruled.

The judgment of the Court of Appeals is affirmed.

OVERSTREET, J., not participating.

## APPENDIX

### TRUE BILL OF INDICTMENT

IN THE NAME AND BY THE AUTHORITY OF THE STATE OF TEXAS, the Grand Jurors, good and lawful men of the County of Dallas, State of Texas duly elected, tried, empaneled, sworn and charged to inquire of offenses committed within the body of said Dallas County, upon their oaths do present in and to the 283rd Judicial District Court of Dallas County, at the January Term, A.D., 1986, that one,

### PHILLIP E. BRIDWELL

hereinafter styled Defendant, on or about the 23rd day of April in the year of our Lord One Thousand Nine Hundred and Eighty–Four in the County and State aforesaid, did then and there, unlawfully, knowingly and intentionally sell and offer for sale and delivery to W.E. Vaughan, a certain security, to-wit:

an oil and gas well venture agreement between W.E. Vaughan and Phillip E. Bridwell doing business as Bridwell Oil Exploration, to drill and test an oil and gas well to be located on the W.T. Waggoner Estate Lease, Wichita and Wilbarger Counties, Texas, which provides W.E. Vaughan is to receive a 24% working interest in consideration for paying 50% of the drilling costs to casing point, and the amount involved in connection with the sale of said security is $10,-000.00 or more,

and the said Phillip E. Bridwell did then and there commit fraud upon the said W.E. Vaughan, by intentionally and knowingly failing to disclose that funds contributed by a previous investor, Loretta P. Lowe, to Phillip E. Bridwell, doing business as Bridwell–Hood Oil Exploration, for the purpose of drilling and testing two (2) oil and gas wells on the Wayne B. Ray Lease, Archer County, Texas, were used for purposes other than those for which they were invested, and the said information being then and there well known by the said Phillip E. Bridwell, and the said Phillip E. Bridwell then and there intentionally failed to disclose said information for the purpose of inducing the said W.E. Vaughan to purchase said security and the said information being material fact;

### COUNT TWO

And the aforesaid Grand Jurors of Dallas County, Texas, upon their oaths, do further present in and to the 283rd Judicial District Court of Dallas County, Texas, at the January Term, A.D., 1986, that the Defendant,

### PHILLIP E. BRIDWELL

on or about the 23rd day of April, A.D., 1984, and before the presentment of this indictment, in the County and State aforesaid, did unlawfully, knowingly and intentionally sell and offer for sale to W.E. Vaughan a certain security, to-wit:

an oil and gas venture agreement between W.E. Vaughan and Phillip E. Bridwell doing business as Bridwell Oil Exploration, to drill and test an oil and gas well to be located on the W.T. Waggoner Estate Lease, Wichita and Wilbarger Counties, Texas, which provides W.E. Vaughan is to receive a 24% working

interest in consideration for paying 50% of the drilling costs to casing point, and the amount involved in connection with the sale of said security is $10,000.00 or more,

and the said Phillip E. Bridwell did then and there commit fraud upon the said W.E. Vaughan, by intentionally and knowingly failing to disclose that funds contributed by a previous investor, James Laurence Purdy, to Phillip E. Bridwell, doing business as Bridwell–Hood Oil Exploration, for the purpose of drilling the Patton Lease Purdy Wells Number One and Number Two, Wichita County, Texas, were used for purposes other than those for which they were invested, and the said information being then and there well known by the said Phillip E. Bridwell, and the said Phillip E. Bridwell then and there intentionally failed to disclose said information for the purpose of inducing the said W.E. Vaughan to purchase said security and the said information being material fact;

**COUNT THREE**

And the aforesaid Grand Jurors of Dallas County, Texas, upon their oaths, do further present in and to the 283rd Judicial District Court of Dallas County, Texas at the January Term, A.D., 1986, that the Defendant,

**PHILLIP E. BRIDWELL**

on or about the 23rd day of April, A.D., 1984, and before the presentment of this indictment, in the County and State aforesaid, did unlawfully, knowingly and intentionally sell and offer for sale and delivery to W.E. Vaughan, a certain security, to-wit:

an oil and gas venture agreement between W.E. Vaughan and Phillip E. Bridwell doing business as Bridwell Oil Exploration, to drill and test an oil and gas well to be located on the W.T. Waggoner Estate Lease, Wichita and Wilbarger Counties, Texas, which provides W.E. Vaughan is to receive a 24% working interest in consideration for paying 50% of the drilling costs to casing point, and the amount involved in connection with

the sale of said security involves $10,000.00 or more,

and the said Phillip E. Bridwell did then and there commit fraud upon the said W.E. Vaughan, by intentionally and knowingly failing to disclose that funds contributed by the said W.E. Vaughan for the purpose of drilling and testing oil and gas wells on the W.T. Waggoner Estate Lease would be used for purposes, to-wit:

to pay for personal expenses incurred by Phillip E. Bridwell, and the said information being then and there well known by the said Phillip E. Bridwell, and the said Phillip E. Bridwell, then and there intentionally failed to disclose said information for the purpose of inducing the said W.E. Vaughan to purchase said security and the said information being material fact;

**contrary to the form of the Statute in such cases made and provided, and against the peace and dignity of the State.**

<u>HENRY WADE</u>

**CRIMINAL DISTRICT ATTORNEY OF DALLAS COUNTY, TEXAS**

(s) <u>E. Davis</u>

**FOREMAN OF THE GRAND JURY**

**TRUE BILL OF INDICTMENT**

IN THE NAME AND BY THE AUTHORITY OF THE STATE OF TEXAS, the Grand Jurors, good and lawful men of the County of Dallas, State of Texas duly elected, tried, empaneled, sworn and charged to inquire of offenses committed within the body of said Dallas County, upon their oaths do present in and to the 283rd Judicial District Court of Dallas County, at the January Term, A.D., 1986, that one,

**PHILLIP E. BRIDWELL**

hereinafter styled Defendant, on or about the 17th day of October in the year of our Lord One Thousand Nine Hundred and Eighty–Three in the County and State aforesaid, did then and there, unlawfully, knowingly and intentionally sell and offer for sale and delivery to James Laurence Purdy, a certain security, to-wit:

an oil and gas well venture agreement between James Laurence Purdy and Phillip E. Bridwell doing business as Bridwell–Hood Oil Exploration, to drill and complete two (2) oil and gas wells to be located on the Patton Lease, Wichita County, Texas, which provides James Laurence Purdy will receive a 48% working interest in consideration for paying 100% of the drilling costs to casing point, and the amount involved in connection with the sale of said security is $10,-000.00 or more,

and the said Phillip E. Bridwell did then and there commit fraud upon the said James Laurence Purdy, by intentionally and knowingly failing to disclose that funds contributed by a previous investor, Loretta P. Lowe, to Phillip E. Bridwell, doing business as Bridwell–Hood Oil Exploration, for the purpose of drilling and testing two (2) oil and gas wells on the Wayne B. Ray Lease, Archer County, Texas, were used for purposes other than those for which they were invested, and the said information being then and there well known by the said Phillip E. Bridwell, and the said Phillip E. Bridwell then and there intentionally failed to disclose said information for the purpose of inducing the said James Laurence Purdy to purchase said security and the said information being material fact;

## COUNT TWO

And the aforesaid Grand Jurors of Dallas County, Texas, upon their oaths, do further present in and to the 283rd Judicial District Court of Dallas County, Texas at the January Term, A.D., 1986, that the Defendant,

### PHILLIP E. BRIDWELL

on or about the 17th day of October, A.D., 1983, and before the presentment of this indictment, in the County and State aforesaid, did unlawfully, knowingly and intentionally sell and offer for sale to James Laurence Purdy, a certain security, to-wit: an oil and gas well venture agreement between James Laurence Purdy and Phillip E. Bridwell doing business as Bridwell–Hood Oil Exploration, to drill and complete two (2) oil and gas wells to be located on the Patton Lease, Wichita County, Texas, which provides James Laurence Purdy will receive a 48% working interest in consideration for paying 100% of the drilling costs to casing point, and the amount involved in connection with the sale of said security is $10,-000.00 or more,

and the said Phillip E. Bridwell did then and there commit fraud upon the said James Laurence Purdy by intentionally and knowingly representing to the said James Laurence Purdy, in a letter dated October 17, 1983, that the first Patton Lease Purdy well, which was to be drilled on November 7, 1983, would offset a well owned by Bridwell–Hood Oil Exploration, known as Patton # 5, which was producing 43 barrels of production a day, and the said Phillip E. Bridwell then and there knew said representation was false in that Bridwell–Hood Oil Exploration did not own a well known as Patton # 5, and the said Phillip E. Bridwell made said false representation for the purpose of inducing the said James Laurence Purdy to purchase said security and said false representation was a misrepresentation of relevant fact;

contrary to the form of the Statute in such cases made and provided, and against the peace and dignity of the State.

HENRY WADE

CRIMINAL DISTRICT ATTORNEY OF

DALLAS COUNTY, TEXAS

(s) E. Davis

FOREMAN OF THE GRAND JURY