gant 



IN THE COURT OF APPEALS, THIRD DISTRICT OF TEXAS,



AT AUSTIN



 




NO. 3-89-150-CR


 NO. 3-89-151-CR

 NO. 3-89-152-CR

 AND 


 NO. 3-89-153-CR 


 


JACK A. GANT, JR.,



 APPELLANT


vs.




THE STATE OF TEXAS,



 APPELLEE


 




FROM THE DISTRICT COURT OF TRAVIS COUNTY, 331ST JUDICIAL DISTRICT



NOS. 88,664, 88,665, 88,666, AND 88,667,



HONORABLE TOM BLACKWELL, JUDGE



 



PER CURIAM

 In a consolidated trial on four separate indictments, a
jury found appellant guilty of violating The Securities Act. (1) The jury assessed a fine of $3,666.66 in cause number 88,664. In
each of the three remaining causes, the jury assessed punishment at
two years imprisonment and a fine of $5000.00. The prison
sentences are to run concurrently. Appellant appeals with six
points of error. We will affirm the judgments of the trial court.

I. BACKGROUND


 In April 1985, appellant, president of Four Way Energy,
Inc. (FWE), offered to sell to Gary Milhollon a working interest in
a one-acre oil and gas lease known as Lenoree No. 1. Milhollon was
furnished a "confidential memorandum" (hereinafter memorandum)
which outlined the nature and details of the offering. The
memorandum is dated April 15, 1985, and recites that a total of 75
points of the working interest in the well are offered for
subscription at a price of $1333.33 per point, or an aggregate
price of $100,000.00, which represents the anticipated drilling,
testing, and completion costs of the well. A subscription of one
point constitutes a 1% working interest (and a .75% net revenue
interest). FWE is to be "carried" for the remaining 25% of the
working-interest expense through the completion point of the well. (2)

The memorandum also recites that the subscription period for this
program expires July 15, 1985. All subscription funds received
will be deposited with the Corpus Christi National Bank of Corpus
Christi, Texas (hereinafter Corpus Christi Bank) until the escrow
is closed. After the offering is terminated, the "subscription
escrow account" will be closed and the funds transferred to a
segregated drilling account at the bank. If the offering does not
close, so that the venture is not formed by July 15, 1985, all
funds are to be refunded to subscribers without assessments or
deductions. 

 On April 26, 1985, Milhollon and appellant signed a
subscription agreement and Milhollon tendered a check for the
purchase of a 2% working interest in Lenoree No. 1. At the time
Milhollon tendered his check, appellant had three accounts with the
Corpus Christi Bank. The first was a drilling account in the name
of Four Way Energy, Inc. (hereinafter drilling account), which was
a commercial checking account on which appellant was the only
signatory. A second account, styled Four Way Energy, Inc., escrow
account, was in reality a money-market commercial checking account
on which appellant was the sole signatory. The third account was
an operating account in the name of Four Way Energy, Inc. No
escrow agreement existed between the Corpus Christi Bank and FWE
for any of these accounts. In addition to the commercial accounts
held at Corpus Christi Bank, appellant and his wife had a personal
checking account (hereinafter the personal account) at Island State
Bank in Port Aransas (hereinafter Island Bank). On April 26, 1985,
appellant deposited the Milhollon check into the drilling account
which, prior to the deposit, had a deficit balance of $5,597.45.

 Between April 22, 1985, and May 24, 1985, appellant sold
a total of twenty subscription points to individual investors, the
last three investors being James Biggers, John R. Butler, and Tom
Butler, each of whom: (1) received a memorandum identical to the
one furnished Milhollon; and (2) on May 24, 1985, purchased a 3%
working interest in Lenoree No. 1. (3)

 Chilo Rivera, an employee with the State Securities Board
testified that he had investigated FWE's Corpus Christi Bank
accounts for the period between April 11, 1985, and July 15, 1985. 
During this period, a total of $33,631.59 was deposited into the
FWE drilling account and a total of $33,681.41 was disbursed
leaving a balance of $36.08. Of the deposits, Rivera was able to
identify $26,465.86 as Lenoree No. 1 investors' funds. Rivera
testified that he identified only $2100.00 of the funds disbursed
from the drilling account between April 11 and July 15, 1985, as
being applied to costs associated with Lenoree No. 1. He
identified numerous disbursements as being unrelated to Lenoree No.
1, including: (1) $7430.27 in disbursements to appellant's
personal account at Island Bank which, with the exception of
$63.97, was used for personal expenses; (2) $1000.00 to the Port
Aransas family center; (3) $5821.64 debited to pay notes unrelated
to Lenoree No. 1; (4) $1726.79 disbursed to Bailey Cadillac; and
(5) $3533.44 disbursed to American Express. 

 There were no funds from investors in Lenoree No. 1
deposited in an escrow account during this time period. A drilling
permit for Lenoree No. 1 was never obtained from the Railroad
Commission, drilling on the lease was never commenced, and the
complainant investors never received a refund of the monies they
invested in the Lenoree No. 1 venture.

II. DISCUSSION AND AUTHORITIES


A. Sufficiency of the Evidence


 In his third point of error, appellant argues that the
evidence is insufficient to support the verdict of conviction
because there is no evidence that the conduct appellant is charged
with constitutes fraud under The Securities Act. 

 The critical inquiry on review of the sufficiency of the
evidence to support a criminal conviction is whether the record
evidence could reasonably support a finding of guilt beyond a
reasonable doubt. This Court does not ask whether it believes that
the evidence at trial established guilt beyond a reasonable doubt. 
Instead, the relevant question is whether, after viewing the
evidence in the light most favorable to the prosecution, any
rational trier of fact could have found the essential elements of
the crime beyond a reasonable doubt. Jackson v. Virginia, 443 U.S.
307, 318-19 (1979); Griffin v. State, 614 S.W.2d 155, 159 (Tex. Cr.
App. 1981). Questions regarding the sufficiency of the evidence
must be resolved in light of the charge which is given. Polk v.
State, 749 S.W.2d 813, 815 (Tex. Cr. App. 1988).

 The relevant portion of the charge instructs: 



[I]f you believe from the evidence beyond a reasonable
doubt that the defendant, JACK A. GANT, JR., on or about
the 24th day of May, 1985, as alleged in indictment No.
[______], in the County of Travis and State of Texas did
then and there unlawfully, intentionally, knowingly and
fraudulently sell and offer for sale to [INVESTOR'S NAME] 
a security, to wit:


A % of the working interest in the one-acre oil and gas
lease known the [sic] Lenoree No. 1 located in Caldwell
County, Texas,


involving an amount of less than $10,000, and the said
JACK A. GANT, JR., did then and there commit fraud upon
the said [INVESTOR'S NAME] by fraudulently and
intentionally failing to disclose that:


Funds paid by previous investors in the Four Way Energy,
Inc. Lenoree No. 1 Drilling Program for the purposes of
drilling, testing and completing the Lenoree No. 1 oil
and gas well had been used by Jack A. Gant, Jr. for
purpose [sic] other than those for which the funds were
invested, 


and the said information being then and there well known
by the said JACK A. GANT, Jr., then [sic] and there
intentionally failed to disclose said information for the
purpose of inducing the said [INVESTOR'S NAME] to
purchase said security and the said information being
material fact; (4) 



(emphasis added). Appellant contends that even if the State proved
everything alleged, appellant did not commit an offense under The
Securities Act. Appellant submits that the failure to disclose
that he may have used previous investors' money for purposes they
did not authorize is not something he is required to reveal under
the fraud provisions of The Securities Act because none of the
prior investors were named as a complainant in any criminal
investigation, indictment or complaint of any kind at the time
appellant is alleged to have committed fraud. Essentially,
appellant argues that his failure to disclose facts is not material
absent the existence of a criminal indictment, complaint, or
investigation. We disagree.

 In Bridwell v. State, 761 S.W.2d 401 (Tex. App. 1988),
aff'd, 804 S.W.2d 900 (Tex. Cr. App. 1991), the Dallas court of
appeals had before it an alleged Securities Act violation involving
similar conduct, i.e., a failure to disclose to prospective
investors the fact that the security seller had used previous
investor funds for purposes other than those for which the funds
were invested. At the time Bridwell failed to disclose his use of
previous investors' funds to the new investor, "legal proceedings"
had been initiated by a previous investor. It appears these
proceedings were civil in nature. (5)
 Bridwell argued that his
failure to disclose that he may have used previous investors' money
for purposes they had not authorized is not something he was
required to reveal absent an indictment or conviction for that
failure, and, therefore, the failure to reveal such information did
not constitute fraud. Bridwell, 761 S.W.2d at 405 (Bridwell I). 
The court rejected this argument and held that Bridwell's failure
to disclose such information to the complainants was sufficient to
demonstrate that he had committed fraud under The Securities Act. 

 Then, on appeal to the court of criminal appeals,
Bridwell challenged the sufficiency of the evidence, arguing that
his prior fraudulent dealings were not material facts and, thus,
disclosure was not required under The Securities Act. Bridwell,
804 S.W.2d at 903 (Bridwell II). In addressing this point, the
court of criminal appeals relied on the test enunciated in TSC
Industries, Inc. v. Northway, Inc., 426 U.S. 438, 449-50 (1976):


 

[A]n omitted fact is material if there is a substantial
likelihood that it would have assumed actual significance
in the deliberations of a reasonable investor, in that it
would have been viewed by the reasonable investor as
significantly altering the total mix of available
information used in deciding whether to invest.2 (6)



Bridwell II, at 904. Reviewing the evidence in the light most
favorable to the verdict, the Court found: 

 

[A] jury could rationally conclude there was a
"substantial likelihood" that a "reasonable investor"
would want to know about appellant's prior use of
investors' funds for personal purposes, and his prior use
of faked documents to explain the lack of return on the
investments. Such disclosure certainly would have
altered the total mix of information, and affected the
decision to invest.



Id. (emphasis added). In support of this conclusion, the court
referred to the testimony of two complainants who stated that they
would not have invested with appellant if they had known of his
prior fraudulent schemes in drilling ventures. Id. 

 To summarize, Bridwell I held that Bridwell's failure to 
disclose use of previous investors' funds for purposes they did not
authorize constituted fraud under the Securities Act, regardless of
the existence of an indictment or conviction. Bridwell II then
made the underlying and necessary determination that the "use of
previous investors' funds for personal purposes" and the "prior use
of fake documents to explain the lack of return on the investments"
are material facts that must be disclosed.

 Applying the "substantial likelihood" test to the facts
in the instant cause, we find that the evidence was sufficient to
support a rational jury finding beyond a reasonable doubt that
appellant's failure to disclose his use of previous investors'
funds for purposes other than those for which the funds were
invested was fraud within the meaning of section 581-4(F) and
former section 581-29(C)(1) of The Securities Act. 

1. The Undisclosed Facts Were Material


 We note that the Bridwell II court coupled the "prior use of
investor funds" with the "prior use of fake documents" in
concluding that disclosure would have altered the total mix of
information and affected the decision to invest. Whether the
"prior use of investor funds," standing alone, is a material fact
that must be disclosed was not specifically addressed. 
Consequently, we will determine whether the prior use of investor
funds involved here is, standing alone, a material fact required to
be disclosed. 

 The purpose of The Securities Act is to require sellers of
securities to be truthful and to provide investors with all
material facts and, thus, allow them to make informed decisions. 
Bridwell I, at 405. The memorandum furnished to the investors
prior to investing recites that the subscription price of $1333.33
per point represents the estimated cost of drilling, testing, and
completing the well. The memorandum goes on to recite the
breakdown for the use of these funds: 



USE OF PROCEEDS AND PARTICIPATION COSTS 
 

The total cost of the immediate aspects of this venture
including lease acquisition of the Lenoree No. 1 are
anticipated as follows:


 *Lease Acquisition

 *Geology, *Legal, *Offering: $16,800

 Drilling/Dry Hole Costs:       50,000

 Completion & Equipping 33,200

 Total $100,000



Rivera's testimony revealed that: (1) the investors' funds were
deposited in the FWE drilling account; (2) appellant disbursed
$7430.27 from the drilling account to his personal account and used
these funds to pay personal expenses; and (3) appellant disbursed
all but $2100.00 of the remaining drilling account funds to pay
expenses unrelated to the Lenoree No. 1 venture. It was Rivera's
testimony that funds of Lenoree No. 1 investors who invested prior
to the Butlers and Biggers were used for purposes other than those
for which the funds were invested. The Butlers and Biggers
testified that appellant did not disclose to them that he had used
prior investors' funds for purposes other than those for which the
funds were invested, and had they known this fact, it would have
been important to them in making an investment decision. 

 With the evidence viewed in the light most favorable to
the verdict, we find that a jury could rationally conclude that a
"reasonable investor" would want to know about appellant's prior
use of investor funds for purposes other than those for which the
funds were invested. Such a disclosure unquestionably would have
altered the total mix of information and affected the decision to
invest. We hold that the failure to disclose that prior investors'
funds were used for purposes other than those for which the funds
were invested is a material fact.

 

 2. The Existence of a Criminal Investigation, Indictment or 
 Complaint Is Not a Prerequisite To The Duty to Disclose

 A Material Fact Under Section 581-4(F) and Former Section 581- 
 29(C)(1) 

 Further, we hold that the existence of a criminal
investigation, indictment or complaint is not a prerequisite to the
duty to disclose a material fact under section 581-4(F) and former
section 581-29(C)(1). As support for this holding, we rely on
Bridwell I and the fact that nothing in Bridwell II indicates that
court linked the initiation of legal proceedings by prior investors
to its determination that the undisclosed information regarding the
use of prior investor funds and fake documents was a material fact. 
As further support, we cite the court's holding in Hawkins v.
State, 656 S.W.2d 70, 73 (Tex. Cr. App. 1983). There the court had
before it a sufficiency of the evidence challenge involving former
section 29(C)(1) in which the indictment alleged the accused failed
to disclose two facts: (1) a prior conviction for security fraud;
and (2) that he would use investor funds for purposes other than
those for which they were invested. The court characterized these
facts as "two material facts that appellant did not disclose" and
held that the latter was sufficient by itself to support the
conviction. Hawkins, 656 S.W.2d at 73. Finally, there is no
language in section 4F or former section 29(C)(1) requiring that
prior investors must initiate criminal proceedings before
information not disclosed concerning a security seller's previous
conduct in relation to investors will be deemed material. To so
hold would add an additional requirement to establish the offense
of security fraud. The evidence is sufficient to support the
jury's verdict. Appellant's third point is overruled. 

B. Sufficiency of the Indictments


 In point of error two, appellant argues that the
indictments fail to state the offense of fraud because the facts he
allegedly failed to disclose do not constitute fraud upon any of
the complainants. (7) The relevant portions of the indictments allege
that:


[T]he said JACK A. GANT, JR., did then and there commit
fraud upon the said [INVESTOR'S NAME] by fraudulently and
intentionally failing to disclose that:


Funds paid by previous investors in Four Way Energy, Inc.
Lenoree No. 1 Drilling Program for the purpose of
drilling, testing and completing the Lenoree No. 1 oil
and gas well had been used by Jack A. Gant, Jr. for
purposes other than those for which the funds were
invested,


and the said information being then and there well known
by the said JACK A. GANT, JR., and the said JACK A. GANT,
JR. then and there intentionally failed to disclose said
information for the purpose of inducing the said
[INVESTOR'S NAME] to purchase said security and the said
information being material fact . . . .



The indictments sufficiently allege the elements necessary to
charge appellant with fraud in connection with the sale of
securities. The conduct alleged in the indictment, if proved,
constitutes fraud within the meaning of former section 29(C)(1). 
Bridwell II, at 905 n.9. We overrule appellant's second point of
error.

C. Mistake of Fact


 Appellant argues in his first point of error that the trial
court erred in failing to charge the jury on the law of mistake of
fact. The Penal Code defines "Mistake of Fact" as follows: "It is
a defense to prosecution that the actor through mistake formed a
reasonable belief about a matter of fact if his mistaken belief
negated the kind of culpability required for commission of the
offense." Tex. Pen. Code Ann. § 8.02(a) (1974). Section 1.07 of
the Penal Code defines "reasonable belief" to mean "a belief that
would be held by an ordinary and prudent man in the same
circumstances as the actor." Tex. Pen. Code Ann. § 1.07(a)(31)
(1974). When any defensive theory is raised by the evidence, the
trial judge must charge the jury on that defensive theory. Green
v. State, 566 S.W.2d 578, 584 (Tex. Cr. App. 1978). A defendant is
entitled to an affirmative defensive instruction on every issue
raised by the evidence regardless of whether it is strong, feeble,
unimpeached, or contradicted and even if the trial court is of the
opinion that the testimony is not entitled to belief. Warren v.
State, 565 S.W.2d 931, 933-34 (Tex. Cr. App. 1978).

 Appellant requested the following instruction on mistake
of fact:



You are instructed that it is a defense to prosecution
for securities fraud that defendant formed a reasonable
but mistaken reasonable belief about a matter of fact
that negates the type of culpability required for the
commission of securities fraud. A reasonable belief is
one that would be held by an ordinary and prudent person
in the same or similar circumstances as a defendant. 
Therefore, if you find from the evidence, beyond a
reasonable doubt, that in connection with the sale of a
percent interest in the oil and gas lease of the Lenoree
No. 1 in Caldwell County, Texas, and the venture had not
in fact been formed by July 5 [sic] 1985, but you find
further from the evidence that the defendant had, prior
to July 15, 1985, formed a reasonable but mistaken belief
that the venture had been formed through a combination of
investors' subscriptions and participation agreements by
contractor, or if the prosecution has failed to persuade
you beyond a reasonable doubt that these facts aren't
true, you will acquit the defendant and say by your
verdict not guilty.



Appellant's mistaken belief about when the venture closed (formed)
is relevant for two reasons. The memorandum recites that once the
venture closed, appellant could transfer the Lenoree No. 1 investor
funds from the escrow account to the drilling account. Second, if
the venture closed after July 15, 1985, appellant was obligated to
refund the investors' money to them without assessments or
deductions. 

 William Norris, executive vice-president of MBank Corpus
Christi, was an officer at Corpus Christi bank in 1985 and was
familiar with appellant and the accounts he held at the bank. He
testified regarding the meaning of the term "closing" contained in
the FWE memorandum that had been furnished to Lenoree No. 1
investors. He testified that "closing" occurs when all the funds
have been subscribed to drill the well, and that, if there is a
subscription by a service company, a contract has been entered for
those services. 

 In order for Lenoree No 1. to be fully subscribed, a
total of 75 points had to be subscribed or participated. Appellant
testified that he received a letter dated April 10, 1985, from CTEC
Corporation, in which the corporation agreed to participate in the
Lenoree No. 1 venture for a forty percent working interest. 
Additionally, as of May 24, 1985, 20 points were subscribed through
participation agreements with individual investors. Finally,
appellant testified to receiving a letter dated August 27, 1985,
from Norten Christensen, Inc. (hereinafter NCI), which appellant
regarded as an agreement to participate in the well. 



 The NCI letter recites, in pertinent part:



Following our conversation on 21 August in Houston, we
are pleased to make the following proposal for employing
Norton Christensen Drainhole Tools and Technology for
completing the referenced well horizontally . . . . 
 

This proposal is intended to demonstrate that Norton
Christensen is interested in participating in the
completion of the subject well. As we discussed, there
are many details that will have to be addressed prior to
our mobilization. A more detailed operational drilling
program will be prepared along with a contract upon
receiving additional information on the geology, offset
well production and proposed schedule.



(Emphasis added.) In exchange for its role in drilling the well,
NCI proposed it receive a 12 1/2% share of total production for the
life of the well. Appellant testified that this was merely written
confirmation of an agreement with NCI, which he alleged had been
reached some months prior, based on conversations he had with
Robert Lenhart, project manager of drainhole drilling at NCI. 
Appellant testified that these letters, coupled with the individual
investor participation agreements satisfied the 75 point
subscription requirement necessary to close the offering, at which
time he was entitled to withdraw those investor funds representing
built-in profit as a return for his promoting the venture. We find
appellant's argument unpersuasive.

1. Mistaken Belief Must Be Reasonable


 We do not believe that an ordinary and prudent person in
the same circumstances as appellant would have formed a belief that
the NCI letter was an agreement to participate in Lenoree No. 1. 
The letter is clearly a proposal. Furthermore, the letter makes
clear that a contract to participate is contingent upon the receipt
of additional information. Nor does the letter support appellant's
contention that an agreement between appellant and NCI had been
reached months earlier. The letter refers to an August 21st
conversation in Houston as the catalyst for the proposal contained
in the August 27, 1985 letter. A defendant is not entitled to an
instruction on mistake of fact where his mistaken belief is not
reasonable. Hefner v. State, 735 S.W.2d 608, 623 (Tex. App. 1987, 
pet. ref'd).


 

2. Mistake Belief Must Negate Culpable Mental State


 Nor would appellant's belief that the venture had closed
once CTEC, NCI, and the individual investors agreed to participate
negate the culpability required for the commission of securities
fraud. Based on the indictments, the necessary culpable mental
states were alleged to have existed:



1) when appellant fraudulently and intentionally
represented that:


a) Investors' funds paid to him for the Four Way
Energy, Inc. Lenoree No. 1 Drilling Program would
be deposited in an escrow account at the Corpus
Christi National Bank of Corpus Christi, Texas; and 

b) If the offering was not closed so that the venture
was not formed by July 15, 1985, all funds would be
refunded to subscribers without assessments or
deductions;


2) when appellant fraudulently and intentionally
failed to disclose that funds invested by investors
would be used for purposes other than those for
which they were invested; and


3) when appellant fraudulently and intentionally
failed to disclose that funds invested by previous
investors had been used for purposes other than
those for which they were invested.



 Appellant was alleged to have committed acts 1(a), (b)
and 2 against Milhollon, and acts 1(a), (b) and 3 against the
Butlers and Biggers. Any one of these acts is sufficient to
support a finding of fraud under The Securities Act fraud
provisions. 

 Appellant's mistaken belief that the venture had closed
once he received the CTEC and NCI letters and the individual
investors' subscriptions does not negate the culpable mental state
of fraudulently and intentionally representing that funds would be
deposited in an escrow account until the offering closed. The
offering could only close when 75 points were subscribed. The
earliest date on which 75 points could have been subscribed would
have been May 24, 1985, when the Butlers and Biggers subscribed for
a combined total of 9 points, bringing the total number of points
subscribed by individual investors to 20. Before this date, the
total possible points subscribed, assuming CTEC, NCI, and the other
individual investors had already subscribed, was less than 75
points. 

 Appellant received investor funds as early as April 26,
1985, when Milhollon tendered his subscription check for a working
interest in Lenoree No. 1. Beginning with Milhollon's check,
appellant deposited the investors' funds in the drilling account
and proceeded to disburse the bulk of the funds, well in excess of
any purported built-in profit, for purposes unrelated to the
Lenoree No. 1 venture. Bank vicepresident Norris testified that
appellant never entered into an escrow agreement with the bank for
the FWE accounts held there. Regarding his complete failure to
open an escrow account, appellant testified, "It's been my
experience not to enter into agreement with banks like that. They
tend to keep your money sometimes and it's hard to get." 

 Likewise, appellant's mistaken belief that the venture
was closed in no way negates his intentional failure to disclose
his use of investor funds for purposes unrelated to the venture. 
The mistaken belief of the actor must negate the culpability
required. Goodin v. State, 726 S.W.2d 956, 959 (Tex. App. 1987),
aff'd, 750 S.W.2d 789 (Tex. Cr. App. 1988); Huizar v. State, 720
S.W.2d 651, 654 (Tex. App. 1986, pet. ref'd). The trial court did
not err in failing to instruct the jury on the defense of mistake
of fact. Appellant's first point of error is overruled.



D. Section 581-4(F) and Former Section 581-29(C)(1) Are Not


 Unconstitutionally Vague


 In points of error four and five appellant complains that
The Securities Act, as applied to the actions for which he was
convicted, is vague and overbroad and violates article I, § 19 of
the Texas Constitution and the fifth and fourteenth amendments to
the United States Constitution. The standard for determining
whether a statute is void for vagueness under both the federal and
state constitutions is whether "it fails to give a person of
ordinary intelligence fair notice that his contemplated conduct is
forbidden by the statute." Papachristou v. City of Jacksonville,
405 U.S. 156, 162 (1972); McMorris v. State, 516 S.W.2d 927, 929
(Tex. Cr. App. 1974); Rose v. State, 716 S.W.2d 162, 167 (Tex. App.
1986), cert. denied, 486 U.S. 1055, rehearing denied, 487 U.S. 1246
(1988). A vagueness challenge to a statute that does not involve
first amendment freedoms must be examined in light of the facts of
the case at hand. United States v. Powell, 423 U.S. 87, 92 (1975). 
 Appellant contends he could not have known that his
failure to disclose that previous investors' money was used for
purposes other than those agreed upon would constitute fraud under
the statute, absent the existence of a criminal indictment,
complaint, or investigation. He further complains that the statute
lacks definitions and standards necessary to determine what is
meant by "intentional failure to disclose a material fact" or
whether the disputed acts are material. (8) 

 A statute is not unconstitutionally vague merely because
the words or terms used are not specifically defined. Instead, the
words or phrase must be read in the context in which they are used. 
Bynum v. State, 767 S.W.2d 769, 774 (Tex. Cr. App. 1989). In Huett
v. State, 672 S.W.2d 533, (Tex. App. 1984, pet. ref'd), the Dallas
court of appeals was confronted with a vagueness challenge to
former section 29(C)(1) in which the appellant argued that
"material fact" as used in section 4(F) is unconstitutionally
vague. The court began its analysis by reading the words in the
context in which they are used:



"Material fact" as found in article 581-4(F) does not
stand alone. Article 581-4(F) must be read in
conjunction with article 581-29(C)(1). Article 581-4(F)
defines the terms "fraud" or "fraudulent practice,",
which are elements of an offense charged under article
581-29(C)(1), to wit: engaging in fraud or fraudulent
practice in connection with the sale of a security. It
is the "engaging in fraud or fraudulent practice in
connection with the sale of a security" that is the
gravamen of the offense charged under article 581-29(c)(1).


 . . . .


. . . It is clear that article 581-29(C)(1) speaks in
terms of the evil to be cured, namely to prevent the
fraudulent sale of securities. The appellant's vagueness
challenge to article 581-29(c)(1) must be viewed in light
of the facts of the case at hand.



Huett, 672 S.W.2d at 538-39. 

 The facts in this cause are: (1) the memorandum provided
to the complainants recited that their investment money would be
used for costs associated with the Lenoree No. 1. venture
(drilling, testing, and completion of the well); (2) despite this
representation, appellant disbursed the investors' money for
personal expenses and other purposes unrelated to the venture; and
(3) the Butlers and Biggers testified that had they known previous
investors' monies had been used for other purposes, it would have
affected their investment decisions. Keeping in mind the purpose
of The Securities Act and applying the "substantial likelihood"
test to the facts in this cause, we hold that a seller of
securities would be well aware that the use of previous investors'
funds for purposes other than those for which the funds were
invested is a material fact which must be disclosed to a new
investor. Appellant was given fair notice that his conduct was
forbidden by the statute. The statute is not unconstitutionally
vague. Appellant's fourth and fifth points are overruled.

 In his sixth point of error appellant complains that the
trial court erred in charging in the disjunctive when the
paragraphs in the indictments allege in the conjunctive those
representations appellant is alleged to have intentionally and
fraudulently made. We have examined appellant's complaint and it
is without merit. Cruz v. State 742 S.W.2d 545, 547 (Tex. App.
1988, no pet.). Appellant's sixth point is overruled.

 The judgments of conviction are affirmed.


[Before Justices Powers, Aboussie and Kidd]

Affirmed on All Causes

Filed: July 24, 1991

[Publish]
1. The relevant language of The Securities Act provides that: 


Any person who shall:


C. In connection with the sale, offering for sale or
delivery of, the purchase, offer to purchase, invitation
of offers to purchase, invitations of offers to sell, or
dealing in any other manner in any security or
securities, whether or not the transaction or security
is exempt under Section 5 or 6 of this Act, directly or
indirectly (1) engage in any fraud or fraudulent
practice, . . . is guilty of a felony and upon
conviction shall be imprisoned for not less than 2 or
more than 10 years, fined not more than $5,000, or both,
if the amount involved in the offense is less than
$10,000, . . . .


1983 Tex. Gen. Laws, ch. 465, Sec. 1 , § 29C(1) at 2711 [Tex. Rev.
Civ. Stat. art. 581-29C(1), since amended].


Section 4(A) of The Securities Act defines "security" or
"securities" to include: "[A]ny instrument representing any
interest in or under an oil, gas, or mining lease." 1957 Tex. Gen.
Laws, ch. 269, § 4(A), at 577-78 [Tex. Rev. Civ. Stat. art. 581-4(A), since amended]. Section 4(F) defines "fraud" or "fraudulent
practice" to include: "[M]isrepresentation, in any manner, of a
relevant fact" or "an intentional failure to disclose a material
fact." Tex. Rev. Civ. Stat. Ann. art. 581-4(F) (1964).
2. Essentially this means that FWE, as the operator of the
venture, is not required to invest its pro-rata share of the
capital needed during the precompletion stage of the well.
Apparently, this is a common arrangement for this type of venture.
3. Milhollon, Biggers, John R. Butler, and Tom Butler are the
individual complainants in the four indictments on which appellant
was tried.
4. The portion of the charge relating to the appellant's
failure to disclose his use of previous investors' funds pertains
to causes 88,665, 88,666, and 88,667 in which Biggers and the
Butlers are the complainants. 
5. Bridwell, 804 S.W.2d at 902, 905 (The court refers to
Bridwell's prior "uncharged" fraudulent conduct).

6. This standard does not require proof of a substantial
likelihood that disclosure of the omitted fact would have caused
the reasonable investor to change his investment decision. It does
contemplate a showing of a substantial likelihood that, under all
the circumstances, the omitted fact would have assumed actual
significance in the deliberations of the reasonable investor. See
TSC Industries, 426 U.S. at 449. 
7. This point is denominated "Ground of Error II" in the text
of appellant's brief. Appellant listed as ground of Error II in the
Table of Contents and on page 8 of his brief an entirely different
point of error which recites: "The trial court erred in allowing
the charge to substitute a working interest of an oil well for a
two (2%) working interest as specified in the indictment." This
"ground" of error is not further addressed in appellant's brief. 
He does not set forth the page of the record where the matter
complained of is to be found. He does not set out a legal theory
on which he rests his contention and he does not present supporting
argument or authorities. Nothing is presented for review. Pierce
v. State, 777 S.W.2d 399, 418 (Tex. Cr. App. 1989), cert. denied,
110 S. Ct. 2603 (1990); Tex. R. App. P. Ann. 74(d) & (f) (Supp.
1990). Instead, we treat the point of error in the text of
appellant's brief, designated as his second "ground" of error and
properly supported by argument and authorities, as his second point
of error.
8. Bridwell I dealt with precisely the question presented here
and held that "a seller of securities would be well aware that the
previous use of funds given by an investor for one specific purpose
which were used for another purpose is a material fact which must
be disclosed to a new investor." This court has also previously so
held. Connor v. State, No. 3-89-229-CR, Tex. App.-Austin, April
17, 1991 (not yet reported). Nevertheless, appellant's vagueness
challenge must be reviewed in light of the facts of the case at
hand. United States v. Powell, 423 U.S. at 92.