**Phillip E. BRIDWELL, Appellant,**

v.

**The STATE of Texas, Appellee.**

**Nos. 05–87–00197–CR, 05–87–00198–CR.**

Court of Appeals of Texas,
Dallas.

Oct. 19, 1988.

George R. Milner and Gary A. Udashen, Dallas, for appellant.

Anne B. Wetherholt, Dallas, for appellee.

Before STEPHENS, HECHT and KINKEADE, JJ.

KINKEADE, Justice.

Phillip E. Bridwell appeals from his two jury convictions for violating the Texas Securities Act and from the two twenty-year jury sentences which run cumulatively. In ten points of error, Bridwell claims: (1) the evidence is insufficient because there is no evidence that Bridwell's charged actions constitute fraud under the Securities Act; (2) the indictment fails to state an offense because the facts which Bridwell allegedly failed to disclose do not constitute fraud upon the complainants in this case; (3) Bridwell was not required to reveal the information concerning his dealings with prior investors since that requirement violates his privilege against self-incrimination under the United States Constitution and (4) under the Texas Constitution; (5) the Texas Securities Act is unconstitutional as applied because it violates Bridwell's rights against self-incrimination under the United States Constitution and (6) under the Texas Constitution; (7) the Texas Securities Act is unconstitutional as applied to the actions for which Bridwell was convicted in violation of his Due Process rights under the United States Constitution and (8) under the Texas Constitution; (9) the trial court erred in failing to charge the jury on the law of mistake of fact; and (10) the trial court improperly cumulated the sentences in these cases. We disagree.

In April and May 1983, Bridwell was given $64,250 by Loretta Lowe and her father to drill two wells on the Wayne B. Ray Lease. On September 20, 1983, Bridwell reported to Lowe that both wells were dry, when in fact no wells were ever drilled and he did not even have an ownership interest in the Ray lease. When Lowe demanded a further explanation, Bridwell sent Lowe documents from the Railroad Commission indicating that the wells had been drilled and capped. Lowe determined that these documents had been forged when she contacted the Railroad Commission and learned that permits had never been filed for drilling the wells on the Ray lease. In his defense, Bridwell testified that he had obtained the Ray lease in April 1983 from Jimmie Smith, the true leaseholder. Smith's secretary testified that while Bridwell did inquire about subleasing the Ray lease, he never purchased any interest. She testified that the documents in evidence which concerned the Ray lease contain alterations and Smith's signature appears to be a forgery.

On September 22, 1983, Bridwell offered James Purdy the opportunity to invest $100,000 in the drilling of two wells on the Patton lease. This offer was extended even though documents from the Texas Railroad Commission dated September 13, 1983, indicate that Patton well #1 had already been drilled and plugged. The State and the defense agree that Purdy was never informed of Bridwell's transactions involving Lowe. Purdy agreed to invest $100,000 in the two wells on the Patton lease. After Purdy's initial check for $45,000 was deposited in Bridwell's personal bank account on October 26, the checks listed hereafter cleared the account within the following two weeks: Visa–$1,000; Amelia Travel–$2,912.50; Marshall Fields–$245.49, American Express–$2,000; Neiman Marcus–$75.43; Sakowitz–$240; IRS $990; SMU Bridwell Library–$5,000; Petroleum Club–$1,000. Finally, Bridwell

withdrew $31,000 from the account, and this money was deposited into a separate account at a savings and loan association. Purdy's second check for $45,000 was deposited by Bridwell on December 14. On January 19, 1984, Bridwell sent Purdy a letter notifying him that the first well had been unsuccessful and the second well had been "cased" but not tested, when in fact the first well was a dry hole before Bridwell had approached Purdy to invest. Purdy testified that he later learned that well # 2 had never been drilled.

On April 23, 1984, W.E. Vaughan gave Bridwell $46,000, to have Bridwell Oil Exploration drill a test well on the "W.T. Waggoner lease". Both the State and the defense agree that Bridwell never informed Vaughan of his transactions with Purdy. Bridwell notified Vaughan on April 30, 1984, that the test well on the "Goetze lease" had been successful and he needed $75,200 more to complete well # 1 and to drill a second well. Although Vaughan never authorized the substitution of the Goetze lease for the Waggoner lease, he sent the $75,200 and an additional $50,119 and $69,999 to allegedly complete a total of four wells.

After Vaughan made numerous unsuccessful attempts to obtain an accounting from Bridwell, Vaughan's accountant and a geologist went to Bridwell's office in late July–August 1984 to determine why his $250,000 investment in "completed" wells had not yielded any return. From their investigation it was learned that well # 1 had no electricity; well # 2 only had pipes sticking out of the ground but had not been capped; well # 3 was cemented and plugged; and well # 4 did not exist.

We first address those points of error concerning the constitutionality of the statute. In points of error seven and eight, Bridwell claims the Texas Securities Act is unconstitutional as applied to the actions for which Bridwell was convicted and violates the Due Process clause of the United States Constitution and the Texas Constitution because the Act is vague and overbroad. The Federal standard for determining if a statute is void for vagueness is: whether it fails to give a person of ordinary intelligence fair notice that his contemplated conduct is forbidden by the statute. *Papachristou v. City of Jacksonville*, 405 U.S. 156, 162, 92 S.Ct. 839, 843, 31 L.Ed.2d 110 (1972); *see Morgan v. State*, 557 S.W. 2d 512, 514 (Tex.Crim.App.1977).

■ The Texas Securities Act, Texas Revised Civil Statutes article 581–29(C)(1) [1] refers to engaging in any fraud or fraudulent practices as defined under Article 581–4(F). The terms "Fraud" and "Fraudulent Practice" are defined in article 581–4(F) to include any misrepresentations of a material fact, any promise or representation or prediction as to the future not made honestly and in good faith, or (as alleged in Bridwell's case) an *intentional failure to disclose a material fact.* The information not disclosed is "material" when there is a substantial likelihood that a reasonable investor would have considered it important in deciding whether to invest. *Kirk v. State*, 611 S.W.2d 148, 151 (Tex.Civ.App.—El Paso 1981, no pet.).

In *Rose v. State*, 716 S.W.2d 162, 167 (Tex.App.—Dallas 1986, pet. ref'd), this court held that article 581–29(C)(1) as it applies the definition of "fraud" in article 581–4(F) is not unconstitutionally vague or overbroad. Article 581–29(C)(1) was also held constitutional in a case involving an omission to disclose a material fact. *Huett v. State*, 672 S.W.2d 533, 540 (Tex.App.— Dallas 1984, pet. ref'd).

Bridwell was involved in a continuing scheme to defraud investors through the sale of substantially the same types of security investments—the prospective drilling of oil wells. Certainly, the close time frame of the events and the similarity of the schemes is one of the factors to consider in determining if facts are "material" The relevant events in relation to the investments which are the subject of this suit are set out below:

April/May 1983—Lowe gives $64,250 to Bridwell to drill an oil well.

---

1. All statutory references are to the Texas Revised Civil Statutes unless otherwise noted.

Sept. 20, 1983—Bridwell reports dry hole on well never drilled.

Sept. 22, 1983—Bridwell offers Purdy the opportunity to invest $100,000.

Oct. 26, 1983—Purdy gives $45,000 to Bridwell to drill an oil well.

Dec. 14, 1983—Purdy gives another $45,000 to Bridwell to "complete" the well.

Jan. 19, 1984—Bridwell reports dry hole on well drilled and plugged prior to any commitment by Purdy.

April 23, 1984—Vaughan gives Bridwell $46,000 to drill an oil well.

To prevent fraudulent inducement to invest, a reasonable investor would have considered it important for the security seller to disclose that within the past twelve months (1) he had involved several other investors in the same type of investment scheme—oil well ventures, and (2) that he did not spend the money on the purpose of the investment; specifically, the drilling of the proposed oil wells, but (3) chose to pay his personal bills.

▆▆▆ We hold a seller of securities would be well aware that the previous use of funds given by an investor for one specific purpose which were used for another purpose is a material fact which must be disclosed to a new investor. Cases of this type are exactly what the Act was created to prevent. Thus, Bridwell was given fair notice that this conduct was forbidden by statute. *See Papchristou*, 405 U.S. at 162, 92 S.Ct. at 843. We overrule Bridwell's points of error seven and eight.

In points of error one and two, Bridwell claims that the evidence is insufficient because there is no evidence that Bridwell committed fraud under the Securities Act and the indictment fails to allege an offense. We disagree.

In two separate, multi-count indictments, Bridwell was convicted of intentionally and knowingly failing to disclose a material fact to James Purdy and W.E. Vaughan. The jury found Bridwell to be guilty under count one of the first indictment of knowingly and intentionally selling or offering to sell to James Purdy, an oil and gas venture located on the Patton Lease, while intentionally failing to disclose to Purdy

that funds contributed by a previous investor were used for purposes other than those for which they were invested. This failure to disclose was for the specific purpose of inducing Purdy to purchase the security agreement. Under count two of the second indictment, Bridwell was found to be guilty of knowingly and intentionally selling or offering to sell to W.E. Vaughan an oil and gas venture on the W.T. Waggoner Estate Lease, while intentionally failing to disclose to Vaughan that funds contributed by a previous investor were used for purposes other than those for which they were invested. This failure to disclose was for the specific purpose of inducing Vaughan to purchase the security agreement.

▆▆▆ The purpose of the Securities Act is to require sellers of securities to be truthful and provide investors with all material facts and thus allow them to make informed decisions. Bridwell was convicted under a penal provision of the Securities Act. TEX.REV.CIV.STAT.ANN. art. 581–29(C) (Vernon Supp.1988). The Act states that no person may sell securities or offer securities for sale and engage in any fraud or fraudulent practice. Bridwell argues that the failure to disclose that he may have used previous investors' money for purposes they had not authorized is not something he is required to reveal absent an indictment or conviction for that failure and, therefore, the failure to reveal such does not constitute fraud.

In determining the sufficiency of the evidence, the appellate court is to determine whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found that Bridwell committed fraud under the Securities Act beyond reasonable doubt. *See Castillo v. State*, 739 S.W.2d 280, 287 (Tex.Crim.App.1987). Both Purdy and Vaughan testified that had they known that previous investors monies were not used to develop oil wells as had been contemplated, they would not have invested in Bridwell's securities. Viewing the evidence in the proper light, we hold that the evidence of Bridwell's failure to disclose

such information to the complainants is sufficient to demonstrate that Bridwell committed fraud under the Act. We overrule Bridwell's points of error one and two.

In points of error three and four, Bridwell claims he was not required to reveal the information concerning his dealings with prior investors because such a requirement violates his privilege against self-incrimination under both the United States and Texas Constitutions. Bridwell argues that he had a constitutional right to not disclose the facts he is charged with failing to disclose.

Bridwell's argument is totally fallacious. The Fifth Amendment to the United States Constitution and article I, section 10 of the Texas Constitution, deal with the right to not be compelled to give evidence against oneself *in all criminal proceedings.* Neither the United States Constitution, nor the Texas Constitution provides a cloak protecting criminal fraud. The Texas Constitution provides no greater right against self-incrimination than the Federal Constitution; they are similar in scope. *Thomas v. State,* 723 S.W.2d 696, 703–05 (Tex.Crim. App.1986). Such disclosure is exactly the purpose of the Securities Act: to protect the public from fraud and imposition by those engaged in selling worthless securities. *Huett,* 672 S.W.2d at 538; *see Flowers v. Dempsey–Tegeler & Co.,* 472 S.W.2d 112, 115 (Tex.1971); *Fowler v. Hults,* 138 Tex. 636, 161 S.W.2d 478, 481 (Tex.Comm'n App.1942, opinion adopted); *Kadane v. Clark,* 135 Tex. 496, 143 S.W.2d 197, 199 (1940). Investors have a right to be informed of prior fraud by securities sellers.

Bridwell relies upon *Marchetti v. State,* 390 U.S. 39, 88 S.Ct. 697, 19 L.Ed.2d 889 (1968); *Grosso v. United States,* 390 U.S. 62, 88 S.Ct. 709, 19 L.Ed.2d 906 (1968); and *Leary v. United States,* 395 U.S. 6, 89 S.Ct. 1532, 23 L.Ed.2d 57 (1969) to support his argument that his Fifth Amendment rights are violated by the Securities Act requirement that he disclose information concerning his prior dealings with investors. These cases are distinguishable from the present case in that the statutes complained of in *Marchetti* (required gamblers to register and pay an occupational tax), *Grosso* (required payment of an excise tax imposed on wagering), and *Leary* (imposed a tax on transfers of marihuana and an occupational tax upon those who deal in the drug), require the person engaged in an illegal act, (e.g. gambling and dealing in marihuana), to report such actions to an agency of the government. We overrule Bridwell's points of error three and four.

In points of error five and six, Bridwell claims the articles 581–29(C) and 581–4(F) are unconstitutional as applied to these cases because they violate his rights against self-incrimination under both the Fifth Amendment to the United States Constitution and Article I, Section 10, of the Texas Constitution. As discussed above, the Federal and State constitutional right against self-incrimination is inapplicable in the present case because articles 581–29 and 581–4 require the disclosure to purchasers of securities at the time of dealing because no governmental entity is involved. We overrule Bridwell's points of error five and six.

In point of error nine, Bridwell claims that the trial court erred in failing to charge the jury on the law of mistake of fact. Mistake of fact is a defensive issue, and its omission from a charge will not warrant reversal of a conviction in the absence of an objection and exception from the defendant. *Gonzales v. State,* 697 S.W.2d 35, 38–39 (Tex.App.—Houston [14th Dist.] 1985, pet. ref'd). Bridwell has waived any complaint concerning the failure to charge the jury concerning mistake of fact because he failed to request that any charge on mistake of fact be submitted to the jury as is required by Texas Code of Criminal Procedure articles 36.14 and 36.-15. An error in the jury charge which draws no objection or request to include or rephrase an issue will not serve as grounds for reversal unless the harm is "egregious," i.e., so harmful that the defendant was denied a fair and impartial trial. *Gibson v. State,* 726 S.W.2d 129, 131 (Tex. Crim.App.1987). It was Bridwell's duty to make known to the trial court any objections to the charge as presented. We hold

that the omission of the mistake of fact definition does not make the charge so deficient that Bridwell was denied a fair and impartial trial. *See Biegajski v. State,* 653 S.W.2d 624, 629 (Tex.App.—San Antonio 1983, pet. ref'd). We overrule Bridwell's ninth point of error.

 In point of error ten, Bridwell claims the trial court improperly cumulated the sentences in these cases.

Generally, the trial court judge has absolute discretion to cumulate sentences. *See Garza v. State,* 687 S.W.2d 325, 329 (Tex. Crim.App.1985); TEX CODE CRIM.PROC. ANN. art. 42.08(a) (Vernon Supp.1988). Bridwell supports his point of error by pointing to an exception to this general rule found in Texas Penal Code Section 3.03 which states: "When the accused is found guilty of more than one offense arising out of the same *criminal episode....* [s]uch sentences shall run concurrently." (Emphasis added.)

Bridwell's argument might be persuasive if the offenses he is charged with had occurred subsequent to September 1, 1987, the effective date of the 1987 amendment to section 3.01 of the Texas Penal Code, which includes an expansive definition of the term "criminal episode." However, the preamendment definition restricts the term "criminal episode" to only apply to the repeated commission of offenses against property as defined in Title 7 of the Penal Code. *See* TEX.PENAL CODE ANN. § 3.01 (Vernon 1974). Bridwell was indicted for fraud under the Securities Act, and, therefore, the mandate of Penal Code Section 3.03 that sentences run concurrently is inapplicable.

We hold there was no abuse of discretion by the trial court in cumulating Bridwell's sentences. We overrule Bridwell's tenth point of error and affirm the trial court's judgment.