James Augustus CONNOR, Appellant,

v.

The STATE of Texas, Appellee.

Nos. 3–89–229–CR to 3–89–231–CR.

Court of Appeals of Texas,
Austin.

April 17, 1991.

Rehearing Overruled June 5, 1991.

561

John A. Peralto, Sp. Prosecutor, Austin, for appellee.

Before CARROLL, C.J., and JONES and DAVIS *, JJ.

DAVIS, Justice (Retired).

Pursuant to a plea bargain agreement, appellant entered pleas of guilty before the court to three indictments charging him with the fraudulent sale of securities in violation of the Texas Securities Act, Tex. Civ.Stat.Ann. arts. 581–29(C)(1) (Supp.1991) and 581–4(F) (1964).[1] Punishment was assessed in each case at ten years' confinement, probated. A condition of probation in the first numbered cause is that appellant pay restitution in the amount of $65,-179.08.

Appellant urges nine points of error, complaining in each of the three causes that the Texas Securities Act is unconstitutional for vagueness as applied to appellant; that the trial court erred by hearing appellant's motions for new trial in the absence of defense counsel; and that the trial court erred in ordering appellant to pay restitution because there was no probative evidence to support the amount of restitution ordered.

The indictments allege that appellant, on behalf of Gaelic Petroleum, Inc., sold interests in the company's drilling rights in San Patricio County. Program agreements were sold to Alfred O. Broome and Albert W. Ratliff, on or about January 21, 1985, and to Elizabeth J. Duncan, on or about May 15, 1985. The indictments charge that appellant fraudulently and intentionally failed to disclose material information to the investors, for the purpose of inducing the investors to purchase working interests in the leases. Specifically, the indictments allege that appellant failed to disclose that funds obtained by Gaelic from prior investors had been used for purposes other than those for which the funds had been invested; and that Gaelic had collected funds in

Banjamin F. Walker, San Antonio, for appellant.

---

* Before Tom G. Davis, Judge (retired), Court of Criminal Appeals, sitting by assignment. *See* Tex. Gov't Code Ann. § 74.003 (1988).

1. Article 581–29(C)(1) makes it a violation to engage in any fraud or fraudulent practice in

selling securities. Article 581–4(F) provides that the terms "fraud" or "fraudulent" practice shall include an intentional failure to disclose a material fact.

1984 from investors to drill and complete wells and to reenter and complete a well in San Patricio County, but had failed to use the investors' funds for such purposes, using the money for purposes unrelated to the wells. In addition, the indictments allege appellant failed to disclose that Gaelic was subject to liens and judgments from previously drilled wells.

Appellant was president of Gaelic, a company purporting to be engaged in the oil and gas business. During 1984 and 1985, Gaelic sold securities, to individual investors, through which the investors acquired an interest in oil and gas wells to be drilled in the future. Stipulated testimony reflects that most of the money acquired by Gaelic was not used to drill oil and gas wells, but instead was converted to the use of appellant and Judy Elliott Martin, vice president of Gaelic, or directed to Portland Car Care Center, Inc., an unrelated business formed by appellant and Martin. All of the investors' money was lost.

Appellant's judicial confession admits all of the allegations in the indictments. By agreement of appellant, after advice from his counsel, the court admitted the stipulated testimony of Chilo Rivera, an investigative accountant with the State Securities Board. The stipulated testimony of Rivera reflects that he had investigated Gaelic by reviewing its books for 1984 and 1985, and interviewing witnesses. Rivera's review of the books revealed the sale of securities to investors, including the three investors named in the indictments, along with thirty-seven other investors in the Cantu Number 8 and Moss leases, both located in San Patricio County. The amounts invested by each investor, the total amount raised, the use of the funds for purposes other than the purported use, the failure to use investors' money to drill the wells, and the failure to inform investors of Gaelic's financial condition were all shown in the stipulated testimony resulting from Rivera's investigative work and his review of Gaelic's books.

■ In his first two points of error, appellant contends that articles 581–29(C)(1) and 581–4(F) are vague and overbroad as applied to the acts alleged in the indictments, with respect to the "material facts" that the appellant allegedly failed to disclose to investors. Appellant urges that the law's failure to afford him "fair notice" of what he was required to tell each prospective investor violates his right to due process guaranteed by both the Fourteenth Amendment to the United States Constitution and article I, § 19 of the Texas Constitution.

In *Bridwell v. State,* 761 S.W.2d 401 (Tex.App.1988), *aff'd,* 804 S.W.2d 900 (Tex. Cr.App.1991), the defendant contended that arts. 581–29(C)(1) and 581–4(F) were unconstitutional as applied to the acts for which he was convicted. Among other contentions, Bridwell claimed violation of his right to due process because the statutes were overbroad. Specifically, he argued that the statutes did not afford him "fair notice" that the use of funds for purposes other than that for which they were invested is a "material fact" which a seller must disclose to prospective investors. Bridwell was involved in a continuing sale of substantially the same type of securities as those sold by appellant in the instant case—the drilling of oil wells on specific leases. Bridwell converted investors' money to his personal use rather than using it to drill wells. The Court of Appeals rejected Bridwell's contention, stating:

> To prevent fraudulent inducement to invest, a reasonable investor would have considered it important for the security seller to disclose that within the past twelve months (1) he had involved several other investors in the same type of investment scheme—oil well ventures, and (2) that he did not spend the money on the purpose of the investment; specifically, the drilling of the proposed oil wells, but (3) chose to pay his personal bills.

> *We hold a seller of securities would be well aware that the previous use of funds given by an investor for one specific purpose which were used for another purpose is a material fact which must be disclosed to a new investor. Cases of this type are exactly what the*

*Act was created to prevent. Thus, Bridwell was given fair notice that this conduct was forbidden by statute.*

761 S.W.2d at 405 (emphasis added).

In affirming the Court of Appeals' decision, the Court of Criminal Appeals addressed the issue of when a fact is "material" under art. 581–4(F), stating:

> [A]n omitted fact is material if there is a substantial likelihood that it would have assumed actual significance in the deliberations of a reasonable investor, in that it would have been viewed by the reasonable investor as significantly altering the total mix of available information used in deciding whether to invest.

*Bridwell,* 804 S.W.2d at 904.

Although the Court of Criminal Appeals did not review the "fair notice" issue, its determination of when an omitted fact is "material" is germane to the resolution of appellant's contention. We conclude that articles 581–29(C)(1) and 581–4(F) give "fair notice" to a securities seller that he must disclose the previous diversion of invested funds to a new investor.

Without the citation of authority, appellant states that it is "noteworthy" that the defendant in *Bridwell* had sold securities as an individual and had used the money for personal expenses, whereas appellant sold securities for a corporation. We perceive no distinction between *Bridwell* and the instant case. We believe that a seller of securities for a corporation would be no less aware that the use of funds obtained from earlier investors for a purpose other than that for which they were intended is a "material fact" which must be disclosed to a new investor. Nor does there appear to be any distinction with respect to the diversion of funds. In the instant case, the majority of the funds were diverted to appellant, Martin, and an unrelated company formed by appellant and Martin. Appellant's first two points of error are overruled.

In appellant's third, fourth, and fifth points of error, he contends that the court erred in hearing his motion for new trial in the absence of counsel to represent appellant at the hearing.

Appellant was represented by retained counsel at trial. Appellant sent the court two handwritten communications in which he stated that his pleas of guilty were not voluntary; that his attorney had pressured him to accept the plea bargain; that he was under great pressure to care for a sick and dying mother at the time of the entry of his pleas; and that his attorney had not investigated the cases nor explained them to him. One of appellant's communications was denominated as a "petition for reopening and rehearing" in the three numbered causes.

The court held a hearing on "what I took to be a Motion for New Trial" on the three causes on August 10, 1989. Appellant appeared without counsel, and after being sworn, testified regarding his attorney's refusal to return his calls, his attorney's pressuring him to accept the plea bargain, the grave state of his mother's health, his own poor health, and the failure of his attorney to fully investigate the case. The court rejected appellant's claim that he had not had time to employ an attorney.

In *Trevino v. State,* 565 S.W.2d 938 (Tex. Cr.App.1978), the court held that the hearing on a motion for new trial is a critical stage of the proceedings at which a defendant is entitled to representation by counsel under the Sixth Amendment to the United States Constitution and article I, § 10 of the Texas Constitution. *Trevino,* 565 S.W.2d at 940. The court further stated that the fact that absent counsel had been retained rather than appointed did not authorize the trial court to proceed with the hearing on the motion for new trial.

■ The rule has long been that a motion for new trial requiring proof of facts extrinsic to the record must be verified. 25 Tex.Jur.3d *Criminal Law* § 3538 (1983). The rationale underlying this requirement appears to be the discouragement of "fishing expeditions" in motions for new trial. *See McIntire v. State,* 698 S.W.2d 652, 658 (Tex.Cr.App.1985). This rule, however, has been relaxed for prison and jail inmates by Tex.Civ.Prac. & Rem.Code Ann. § 132.001 (Supp.1991) which provides that an in-

mate's unsworn declaration may be used in lieu of a written sworn declaration, verification, certification, oath, or affidavit. Section 132.002 requires that the inmate's declaration be in writing and subscribed by the declarant as true under penalty of perjury. Section 132.003 provides the form shall be substantially as follows:

I, (insert name and inmate identifying number from Texas Department of Corrections or county jail), being presently incarcerated in (insert Texas Department of Corrections unit name or county jail name) in ___ County, Texas, declare under penalty of perjury that the foregoing is true and correct. Executed on (date). (signature)

While it appears that appellant was not incarcerated, we find the cases addressing communications by inmates to a court seeking new trials to be instructive.

In *McMillan v. State*, 769 S.W.2d 675 (Tex.App.1989, pet. ref'd), the defendant omitted his inmate number and the name and location of his penal institution. However, the defendant attached to his motion a declaration which he subscribed "as true and correct under oath and penalty of perjury." The court concluded that the omitted information was only for the purpose of identification, a matter within the knowledge of the incarcerating court, and concluded that the defendant had substantially complied with the requirements of § 132.003. *McMillan*, 769 S.W.2d at 677.

■ The matters raised by appellant in his communications to the court, involuntariness of his plea of guilty and ineffective assistance of counsel, required the proof of facts that were not within the knowledge of the court. Appellant's communications that the court considered to be motions for new trial did not contain any of the declarations required by inmates under §§ 132.-001, 132.002 and 132.003, nor are there averments that could constitute substantial compliance. *See White v. State*, 167 Tex. Crim. 591, 321 S.W.2d 582, 582 (1959); *Epperson v. State*, 82 Tex.Crim. 245, 199 S.W. 478, 479 (1917).

In *Thomas v. State*, 166 Tex.Crim. 584, 316 S.W.2d 741 (1958), the court had heard evidence on the defendant's unverified motion for new trial. The court held that the unverified motion was insufficient as a pleading and any exception to the overruling thereof could not be considered. *Thomas*, 316 S.W.2d at 741. The court further held that the fact that the trial court heard evidence on the motion did not cure the defect, as the motion must be sufficient as a pleading. *Id.*

We hold that appellant's written communications with the court were insufficient to constitute a motion for new trial. The fact that the court heard evidence on the communications did not cure the defect. Since there was no motion before the court, the absence of counsel to represent appellant at the hearing does not constitute error. Appellant's third, fourth, and fifth points of error are overruled.

In appellant's sixth, seventh, and eighth points of error, he contends the court erred in ordering him to pay restitution in the amount of $65,179.08 in that there was no support for the amount of ordered restitution. Appellant alleges that this violates his due process rights under both the United States Constitution and the Texas Constitution.

Appellant directs our attention to the fact that the victims named in the indictment, Elizabeth J. Duncan, Alfred O. Broome, and Albert W. Ratliff, sustained losses by virtue of their investments in Gaelic in the amounts of $3,821.25, $3,717.19 and $3,717.19, respectively.

Appellant relies on Texas Code Cr.P.Ann. art. 42.12, § 11(b) (Supp.1991), authorizing the court to order restitution, as a condition of probation, to the "victim" of the offense. Appellant urges that the trial court has no jurisdiction to order restitution to anyone other than the "victim" of the offense of conviction.

Recently, this Court affirmed the convictions of Judy Elliott Martin (vice president of Gaelic) for offenses arising from the same transactions as those in the instant case. *See Martin v. State*, 806 S.W.2d 237 (Tex.App.1991). The Court rejected defendant Martin's identical contention that art.

42.12, § 11(b) limited the court in ordering restitution, as a condition of probation, to the "victim" of the offense that resulted in the conviction. The Court stated that:

> [D]ue process requires that before restitution may be awarded to any person, there must be a factual basis in the record supporting the conclusion that the defendant was criminally responsible for the injury to that person; that the injury directly resulted from the offense for which the defendant was found guilty *or from the same course of criminal conduct giving rise to the conviction;* and that the amount of restitution ordered is reasonable and just.

*Martin,* 806 S.W.2d at 242 (emphasis added).

Appellant further urges that there is no factual basis to support the amount of restitution ordered. Rivera's stipulated testimony reflects that forty investors (including the three investors named in the indictments) purchased securities totalling $130,358.17 in the Cantu and Moss projects. Appellant's plea-bargain agreement provided for payment of one-half this amount, $65,179.08.

Appellant's judicial confession and Rivera's stipulated testimony establish that appellant was an active and knowing participant in the fraudulent inducement of investors to purchase Gaelic's programs, and that the injury to investors other than those named in the indictments resulted from the same course of criminal conduct that gave rise to the instant convictions. We hold that there was a factual basis to support a finding that the money invested pursuant to this fraudulent scheme totalled $130,358.17. We hold that the trial court did not abuse its discretion by ordering appellant to pay $65,179.08 in restitution as a condition of probation.

Our holding is limited to a determination that there is a factual basis for the amount of restitution ordered. Appellant does not raise nor do we pass on whether there is a factual basis for paying restitution to any particular person.

Appellant's sixth, seventh, and eighth points of error are overruled.

The judgments are affirmed.