Jack A. GANT, Jr., Appellant,

v.

The STATE of Texas, Appellee.

Nos. 3–89–150–CR to 3–89–153–CR.

Court of Appeals of Texas,
Austin.

July 24, 1991.

James E. Anderson, Austin, for appellant.

Ronald Earle, Dist. Atty., Daniel Williams, Asst. Dist. Atty., Austin, for appellee.

Before POWERS, ABOUSSIE and KIDD, JJ.

PER CURIAM.

In a consolidated trial on four separate indictments, a jury found appellant guilty of violating The Securities Act.[1] The jury assessed a fine of $3,666.66 in cause number 88,664. In each of the three remaining causes, the jury assessed punishment at two years imprisonment and a fine of $5000.00. The prison sentences are to run concurrently. Appellant appeals with six points of error. We will affirm the judgments of the trial court.

## I. BACKGROUND

In April 1985, appellant, president of Four Way Energy, Inc. (FWE), offered to sell to Gary Milhollon a working interest in a one-acre oil and gas lease known as Lenoree No. 1. Milhollon was furnished a "confidential memorandum" (hereinafter memorandum) which outlined the nature and details of the offering. The memorandum is dated April 15, 1985, and recites that a total of 75 points of the working interest in the well are offered for subscription at a price of $1333.33 per point, or an aggregate price of $100,000.00, which represents the anticipated drilling, testing, and completion costs of the well. A subscription of one point constitutes a 1% working interest (and a .75% net revenue interest). FWE is to be "carried" for the remaining 25% of the working-interest expense through the completion point of the well.[2] The memorandum also recites that the subscription period for this program expires July 15, 1985. All subscription funds received will be deposited with the Corpus Christi National Bank of Corpus Christi, Texas (hereinafter Corpus Christi Bank) until the escrow is closed. After the offering is terminated, the "subscription escrow account" will be closed and the funds transferred to a segregated drilling account at the bank. If the offering does not close, so that the venture is not formed by July 15, 1985, all funds are to be refunded to subscribers without assessments or deductions.

On April 26, 1985, Milhollon and appellant signed a subscription agreement and Milhollon tendered a check for the purchase of a 2% working interest in Lenoree No. 1. At the time Milhollon tendered his check, appellant had three accounts with the Corpus Christi Bank. The first was a

---

1. The relevant language of The Securities Act provides that:

   Any person who shall:

   C. In connection with the sale, offering for sale or delivery of, the purchase, offer to purchase, invitation of offers to purchase, invitations of offers to sell, or dealing in any other manner in any security or securities, whether or not the transaction or security is exempt under Section 5 or 6 of this Act, directly or indirectly (1) engage in any fraud or fraudulent practice, ... is guilty of a felony and upon conviction shall be imprisoned for not less than 2 or more than 10 years, fined not more than $5,000, or both, if the amount involved in the offense is less than $10,000,....

   1983 Tex.Gen.Laws, ch. 465, Sec. 1, § 29 C(1) at 2711 [Tex.Rev.Civ.Stat. art. 581–29 C(1), since amended].

2. Essentially this means that FWE, as the operator of the venture, is not required to invest its pro-rata share of the capital needed during the precompletion stage of the well. Apparently, this is a common arrangement for this type of venture.

Section 4(A) of The Securities Act defines "security" or "securities" to include: "[A]ny instrument representing any interest in or under an oil, gas, or mining lease." 1957 Tex.Gen.Laws, ch. 269, § 4(A), at 577–78 [Tex.Rev.Civ.Stat. art. 581–4(A), since amended]. Section 4(F) defines "fraud" or "fraudulent practice" to include: "[M]isrepresentation, in any manner, of a relevant fact" or "an intentional failure to disclose a material fact." Tex.Rev.Civ.Stat.Ann. art. 581–4(F) (1964).

drilling account in the name of Four Way Energy, Inc. (hereinafter drilling account), which was a commercial checking account on which appellant was the only signatory. A second account, styled Four Way Energy, Inc., escrow account, was in reality a money-market commercial checking account on which appellant was the sole signatory. The third account was an operating account in the name of Four Way Energy, Inc. No escrow agreement existed between the Corpus Christi Bank and FWE for any of these accounts. In addition to the commercial accounts held at Corpus Christi Bank, appellant and his wife had a personal checking account (hereinafter the personal account) at Island State Bank in Port Aransas (hereinafter Island Bank). On April 26, 1985, appellant deposited the Milhollon check into the drilling account which, prior to the deposit, had a deficit balance of $5,597.45.

Between April 22, 1985, and May 24, 1985, appellant sold a total of twenty subscription points to individual investors, the last three investors being James Biggers, John R. Butler, and Tom Butler, each of whom: (1) received a memorandum identical to the one furnished Milhollon; and (2) on May 24, 1985, purchased a 3% working interest in Lenoree No. 1.[3]

Chilo Rivera, an employee with the State Securities Board testified that he had investigated FWE's Corpus Christi Bank accounts for the period between April 11, 1985, and July 15, 1985. During this period, a total of $33,631.59 was deposited into the FWE drilling account and a total of $33,681.41 was disbursed leaving a balance of $36.08. Of the deposits, Rivera was able to identify $26,465.86 as Lenoree No. 1 investors' funds. Rivera testified that he identified only $2100.00 of the funds disbursed from the drilling account between April 11 and July 15, 1985, as being applied to costs associated with Lenoree No. 1. He identified numerous disbursements as being unrelated to Lenoree No. 1, including: (1) $7430.27 in disbursements to appellant's personal account at Island Bank which,

with the exception of $63.97, was used for personal expenses; (2) $1000.00 to the Port Aransas family center; (3) $5821.64 debited to pay notes unrelated to Lenoree No. 1; (4) $1726.79 disbursed to Bailey Cadillac; and (5) $3533.44 disbursed to American Express.

There were no funds from investors in Lenoree No. 1 deposited in an escrow account during this time period. A drilling permit for Lenoree No. 1 was never obtained from the Railroad Commission, drilling on the lease was never commenced, and the complainant investors never received a refund of the monies they invested in the Lenoree No. 1 venture.

## II. DISCUSSION AND AUTHORITIES

### A. Sufficiency of the Evidence

In his third point of error, appellant argues that the evidence is insufficient to support the verdict of conviction because there is no evidence that the conduct appellant is charged with constitutes fraud under The Securities Act.

The critical inquiry on review of the sufficiency of the evidence to support a criminal conviction is whether the record evidence could reasonably support a finding of guilt beyond a reasonable doubt. This Court does not ask whether it believes that the evidence at trial established guilt beyond a reasonable doubt. Instead, the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 318–19, 99 S.Ct. 2781, 2788–89, 61 L.Ed.2d 560 (1979); *Griffin v. State*, 614 S.W.2d 155, 159 (Tex.Cr.App.1981). Questions regarding the sufficiency of the evidence must be resolved in light of the charge which is given. *Polk v. State*, 749 S.W.2d 813, 815 (Tex.Cr.App.1988).

---

**3.** Milhollon, Biggers, John R. Butler, and Tom Butler are the individual complainants in the four indictments on which appellant was tried.

The relevant portion of the charge instructs:

> [I]f you believe from the evidence beyond a reasonable doubt that the defendant, JACK A. GANT, JR., on or about the 24th day of May, 1985, as alleged in indictment No. [_____], in the County of Travis and State of Texas did then and there unlawfully, intentionally, knowingly and fraudulently sell and offer for sale to [INVESTOR'S NAME] a security, to wit:
>
> A % of the working interest in the one-acre oil and gas lease known the [sic] Lenoree No. 1 located in Caldwell County, Texas,
>
> involving an amount of less than $10,000, and the said JACK A. GANT, JR., did then and there commit fraud upon the said [INVESTOR'S NAME] by *fraudulently and intentionally failing to disclose that:*
>
> *Funds paid by previous investors in the Four Way Energy, Inc. Lenoree No. 1 Drilling Program for the purposes of drilling, testing and completing the Lenoree No. 1 oil and gas well had been used by Jack A. Gant, Jr. for purpose [sic] other than those for which the funds were invested,*
>
> and the said information being then and there well known by the said JACK A. GANT, Jr., then [sic] and there intentionally failed to disclose said information for the purpose of inducing the said [INVESTOR'S NAME] to purchase said security and the said information being material fact; [4]

(emphasis added). Appellant contends that even if the State proved everything alleged, appellant did not commit an offense under The Securities Act. Appellant submits that the failure to disclose that he may have used previous investors' money for purposes they did not authorize is not something he is required to reveal under the fraud provisions of The Securities Act because none of the prior investors were named as a complainant in any criminal investigation, indictment or complaint of any kind at the time appellant is alleged to have committed fraud. Essentially, appellant argues that his failure to disclose facts is not material absent the existence of a criminal indictment, complaint, or investigation. We disagree.

In *Bridwell v. State*, 761 S.W.2d 401 (Tex.App.1988), aff'd, 804 S.W.2d 900 (Tex. Cr.App.1991), the Dallas court of appeals had before it an alleged Securities Act violation involving similar conduct, i.e., a failure to disclose to prospective investors the fact that the security seller had used previous investor funds for purposes other than those for which the funds were invested. At the time Bridwell failed to disclose his use of previous investors' funds to the new investor, "legal proceedings" had been initiated by a previous investor. It appears these proceedings were civil in nature.[5] Bridwell argued that his failure to disclose that he may have used previous investors' money for purposes they had not authorized is not something he was required to reveal absent an indictment or conviction for that failure, and, therefore, the failure to reveal such information did not constitute fraud. *Bridwell*, 761 S.W.2d at 405 (*Bridwell I*). The court rejected this argument and held that Bridwell's failure to disclose such information to the complainants was sufficient to demonstrate that he had committed fraud under The Securities Act.

Then, on appeal to the court of criminal appeals, Bridwell challenged the sufficiency of the evidence, arguing that his prior fraudulent dealings were not material facts and, thus, disclosure was not required under The Securities Act. *Bridwell*, 804 S.W.2d at 903 (*Bridwell II*). In addressing this point, the court of criminal appeals relied on the test enunciated in *TSC Industries, Inc. v. Northway, Inc.*, 426 U.S. 438, 449–50, 96 S.Ct. 2126, 2132–33, 48 L.Ed.2d 757 (1976):

---

**4.** The portion of the charge relating to the appellant's failure to disclose his use of **previous** investors' funds pertains to causes 88,665, 88,-666, and 88,667 in which Biggers and the Butlers are the complainants.

**5.** *Bridwell*, 804 S.W.2d at 902, 905 (The court refers to Bridwell's prior "uncharged" fraudulent conduct).

[A]n omitted fact is material if there is a substantial likelihood that it would have assumed actual significance in the deliberations of a reasonable investor, in that it would have been viewed by the reasonable investor as significantly altering the total mix of available information used in deciding whether to invest.2[6]

*Bridwell II*, at 904. Reviewing the evidence in the light most favorable to the verdict, the Court found:

[A] jury could rationally conclude there was a "substantial likelihood" that a "reasonable investor" would want to know about appellant's *prior use of investors' funds for personal purposes*, and his prior use of faked documents to explain the lack of return on the investments. Such disclosure certainly would have altered the total mix of information, and affected the decision to invest.

*Id.* (emphasis added). In support of this conclusion, the court referred to the testimony of two complainants who stated that they would not have invested with appellant if they had known of his prior fraudulent schemes in drilling ventures. *Id.*

To summarize, *Bridwell I* held that Bridwell's failure to disclose use of previous investors' funds for purposes they did not authorize constituted fraud under the Securities Act, regardless of the existence of an indictment or conviction. *Bridwell II* then made the underlying and necessary determination that the "use of previous investors' funds for personal purposes" and the "prior use of fake documents to explain the lack of return on the investments" are material facts that must be disclosed.

■ Applying the "substantial likelihood" test to the facts in the instant cause, we find that the evidence was sufficient to support a rational jury finding beyond a reasonable doubt that appellant's failure to disclose his use of previous investors' funds for purposes other than those for which the funds were invested was fraud

within the meaning of section 581-4(F) and former section 581-29(C)(1) of The Securities Act.

### 1. The Undisclosed Facts Were Material

We note that the *Bridwell II* court coupled the "prior use of investor funds" with the "prior use of fake documents" in concluding that disclosure would have altered the total mix of information and affected the decision to invest. Whether the "prior use of investor funds," standing alone, is a material fact that must be disclosed was not specifically addressed. Consequently, we will determine whether the prior use of investor funds involved here is, standing alone, a material fact required to be disclosed.

■ The purpose of The Securities Act is to require sellers of securities to be truthful and to provide investors with all material facts and, thus, allow them to make informed decisions. *Bridwell I*, at 405. The memorandum furnished to the investors prior to investing recites that the subscription price of $1333.33 per point represents the estimated cost of drilling, testing, and completing the well. The memorandum goes on to recite the breakdown for the use of these funds:

USE OF PROCEEDS AND PARTICIPATION COSTS

The total cost of the immediate aspects of this venture including lease acquisition of the Lenoree No. 1 are anticipated as follows:

| | |
|---|---|
| *Lease Acquisition | |
| *Geology, *Legal, *Offering: | $ 16,800 |
| Drilling/Dry Hole Costs: | 50,000 |
| Completion & Equipping | 33,200 |
| Total | $100,000 |

Rivera's testimony revealed that: (1) the investors' funds were deposited in the FWE drilling account; (2) appellant disbursed $7430.27 from the drilling account to his personal account and used these funds to pay personal expenses; and (3) appellant disbursed all but $2100.00 of the

---

**6.** This standard does not require proof of a substantial likelihood that disclosure of the omitted fact would have caused the reasonable investor to change his investment decision. It does contemplate a showing of a substantial likelihood that, under all the circumstances, the omitted fact would have assumed actual significance in the deliberations of the reasonable investor. *See TSC Industries*, 426 U.S. at 449, 96 S.Ct. at 2132.

remaining drilling account funds to pay expenses unrelated to the Lenoree No. 1 venture. It was Rivera's testimony that funds of Lenoree No. 1 investors who invested prior to the Butlers and Biggers were used for purposes other than those for which the funds were invested. The Butlers and Biggers testified that appellant did not disclose to them that he had used prior investors' funds for purposes other than those for which the funds were invested, and had they known this fact, it would have been important to them in making an investment decision.

With the evidence viewed in the light most favorable to the verdict, we find that a jury could rationally conclude that a "reasonable investor" would want to know about appellant's prior use of investor funds for purposes other than those for which the funds were invested. Such a disclosure unquestionably would have altered the total mix of information and affected the decision to invest. We hold that the failure to disclose that prior investors' funds were used for purposes other than those for which the funds were invested is a material fact.

2. The Existence of a Criminal Investigation, Indictment or Complaint Is Not a Prerequisite To The Duty to Disclose A Material Fact Under Section 581–4(F) and Former Section 581–29(C)(1)

■ Further, we hold that the existence of a criminal investigation, indictment or complaint is not a prerequisite to the duty to disclose a material fact under section 581–4(F) and former section 581–29(C)(1). As support for this holding, we rely on *Bridwell I* and the fact that nothing in *Bridwell II* indicates that court linked the

initiation of legal proceedings by prior investors to its determination that the undisclosed information regarding the use of prior investor funds and fake documents was a material fact. As further support, we cite the court's holding in *Hawkins v. State*, 656 S.W.2d 70, 73 (Tex.Cr.App.1983). There the court had before it a sufficiency of the evidence challenge involving former section 29(C)(1) in which the indictment alleged the accused failed to disclose two facts: (1) a prior conviction for security fraud; and (2) that he **would** use investor funds for purposes other than those for which they were invested. The court characterized these facts as **"two material facts that appellant did not disclose"** and held that the latter was sufficient by itself to support the conviction. *Hawkins*, 656 S.W.2d at 73. Finally, there is no language in section 4F or former section 29(C)(1) requiring that prior investors must initiate criminal proceedings before information not disclosed concerning a security seller's previous conduct in relation to investors will be deemed material. To so hold would add an additional requirement to establish the offense of security fraud. The evidence is sufficient to support the jury's verdict. Appellant's third point is overruled.

### B. Sufficiency of the Indictments

■ In point of error two, appellant argues that the indictments fail to state the offense of fraud because the facts he allegedly failed to disclose do not constitute fraud upon any of the complainants.[7] The relevant portions of the indictments allege that:

[T]he said JACK A. GANT, JR., did then and there commit fraud upon the said

---

**7.** This point is denominated "Ground of Error II" in the text of appellant's brief. Appellant listed as ground of Error II in the Table of Contents and on page 8 of his brief an entirely different point of error which recites: "The trial court erred in allowing the charge to substitute a working interest of an oil well for a two (2%) working interest as specified in the indictment." This "ground" of error is not further addressed in appellant's brief. He does not set forth the page of the record where the matter complained of is to be found. He does not set out a legal

theory on which he rests his contention and he does not present supporting argument or authorities. Nothing is presented for review. *Pierce v. State*, 777 S.W.2d 399, 418 (Tex.Cr.App. 1989), cert. denied, —— U.S. ——, 110 S.Ct. 2603, 110 L.Ed.2d 283 (1990); Tex.R.App.P.Ann. 74(d) & (f) (Supp.1991). Instead, we treat the point of error in the text of appellant's brief, designated as his second "ground" of error and properly supported by argument and authorities, as his second point of error.

[INVESTOR'S NAME] by fraudulently and intentionally failing to disclose that: Funds paid by previous investors in Four Way Energy, Inc. Lenoree No. 1 Drilling Program for the purpose of drilling, testing and completing the Lenoree No. 1 oil and gas well had been used by Jack A. Gant, Jr. for purposes other than those for which the funds were invested,

and the said information being then and there well known by the said JACK A. GANT, JR., and the said JACK A. GANT, JR. then and there intentionally failed to disclose said information for the purpose of inducing the said [INVESTOR'S NAME] to purchase said security and the said information being material fact....

The indictments sufficiently allege the elements necessary to charge appellant with fraud in connection with the sale of securities. The conduct alleged in the indictment, if proved, constitutes fraud within the meaning of former section 29(C)(1). *Bridwell II*, at 905 n. 9. We overrule appellant's second point of error.

## C. Mistake of Fact

▮ Appellant argues in his first point of error that the trial court erred in failing to charge the jury on the law of mistake of fact. The Penal Code defines "Mistake of Fact" as follows: "It is a defense to prosecution that the actor through mistake formed a reasonable belief about a matter of fact if his mistaken belief negated the kind of culpability required for commission of the offense." Tex.Pen.Code Ann. § 8.02(a) (1974). Section 1.07 of the Penal Code defines "reasonable belief" to mean "a belief that would be held by an ordinary and prudent man in the same circumstances as the actor." Tex.Pen.Code Ann. § 1.07(a)(31) (1974). When any defensive theory is raised by the evidence, the trial judge must charge the jury on that defensive theory. *Green v. State*, 566 S.W.2d 578, 584 (Tex.Cr.App.1978). A defendant is entitled to an affirmative defensive instruction on every issue raised by the evidence regardless of whether it is strong, feeble, unimpeached, or contradicted and even if the trial court is of the opinion that the

testimony is not entitled to belief. *Warren v. State*, 565 S.W.2d 931, 933–34 (Tex.Cr. App.1978).

Appellant requested the following instruction on mistake of fact:

You are instructed that it is a defense to prosecution for securities fraud that defendant formed a reasonable but mistaken reasonable belief about a matter of fact that negates the type of culpability required for the commission of securities fraud. A reasonable belief is one that would be held by an ordinary and prudent person in the same or similar circumstances as a defendant. Therefore, if you find from the evidence, beyond a reasonable doubt, that in connection with the sale of a percent interest in the oil and gas lease of the Lenoree No. 1 in Caldwell County, Texas, and the venture had not in fact been formed by July 5 [sic] 1985, but you find further from the evidence that the defendant had, prior to July 15, 1985, formed a reasonable but mistaken belief that the venture had been formed through a combination of investors' subscriptions and participation agreements by contractor, or if the prosecution has failed to persuade you beyond a reasonable doubt that these facts aren't true, you will acquit the defendant and say by your verdict not guilty.

Appellant's mistaken belief about when the venture closed (formed) is relevant for two reasons. The memorandum recites that once the venture closed, appellant could transfer the Lenoree No. 1 investor funds from the escrow account to the drilling account. Second, if the venture closed after July 15, 1985, appellant was obligated to refund the investors' money to them without assessments or deductions.

William Norris, executive vice-president of MBank Corpus Christi, was an officer at Corpus Christi bank in 1985 and was familiar with appellant and the accounts he held at the bank. He testified regarding the meaning of the term "closing" contained in the FWE memorandum that had been furnished to Lenoree No. 1 investors. He testified that "closing" occurs when all the funds have been subscribed to drill the

well, and that, if there is a subscription by a service company, a contract has been entered for those services.

In order for Lenoree No. 1 to be fully subscribed, a total of 75 points had to be subscribed or participated. Appellant testified that he received a letter dated April 10, 1985, from CTEC Corporation, in which the corporation agreed to participate in the Lenoree No. 1 venture for a forty percent working interest. Additionally, as of May 24, 1985, 20 points were subscribed through participation agreements with individual investors. Finally, appellant testified to receiving a letter dated August 27, 1985, from Norten Christensen, Inc. (hereinafter NCI), which appellant regarded as an agreement to participate in the well.

> The NCI letter recites, in pertinent part: Following our conversation on 21 August in Houston, we are pleased to make the following *proposal* for employing Norton Christensen Drainhole Tools and Technology for completing the referenced well horizontally. . . .
>
> This *proposal* is intended to demonstrate that Norton Christensen is *interested in participating* in the completion of the subject well. *As we discussed,* there are many details that will have to be addressed prior to our mobilization. *A more detailed operational drilling program will be prepared along with a contract upon receiving additional information* on the geology, offset well production and proposed schedule.

(Emphasis added.) In exchange for its role in drilling the well, NCI proposed it receive a 12½% share of total production for the life of the well. Appellant testified that this was merely written confirmation of an agreement with NCI, which he alleged had been reached some months prior, based on conversations he had with Robert Lenhart, project manager of drainhole drilling at NCI. Appellant testified that these letters, coupled with the individual investor participation agreements satisfied the 75 point subscription requirement necessary to close the offering, at which time he was entitled to withdraw those investor funds representing built-in profit as a return for his

promoting the venture. We find appellant's argument unpersuasive.

### 1. Mistaken Belief Must Be Reasonable

▉▉▉ We do not believe that an ordinary and prudent person in the same circumstances as appellant would have formed a belief that the NCI letter was an agreement to participate in Lenoree No. 1. The letter is clearly a proposal. Furthermore, the letter makes clear that a contract to participate is contingent upon the receipt of additional information. Nor does the letter support appellant's contention that an agreement between appellant and NCI had been reached months earlier. The letter refers to an August 21st conversation in Houston as the catalyst for the proposal contained in the August 27, 1985 letter. A defendant is not entitled to an instruction on mistake of fact where his mistaken belief is not reasonable. *Hefner v. State,* 735 S.W.2d 608, 623 (Tex.App.1987, pet. ref'd).

### 2. Mistake Belief Must Negate Culpable Mental State

Nor would appellant's belief that the venture had closed once CTEC, NCI, and the individual investors agreed to participate negate the culpability required for the commission of securities fraud. Based on the indictments, the necessary culpable mental states were alleged to have existed:

1) when appellant fraudulently and intentionally represented that:

a) Investors' funds paid to him for the Four Way Energy, Inc. Lenoree No. 1 Drilling Program would be deposited in an escrow account at the Corpus Christi National Bank of Corpus Christi, Texas; and

b) If the offering was not closed so that the venture was not formed by July 15, 1985, all funds would be refunded to subscribers without assessments or deductions;

2) when appellant fraudulently and intentionally failed to disclose that funds invested by investors *would be* used for purposes other than those for which they were invested; and

3) when appellant fraudulently and intentionally failed to disclose that funds invested by previous investors *had been* used for purposes other than those for which they were invested.

(Emphasis added). Appellant was alleged to have committed acts 1(a), (b) and 2 against Milhollon, and acts 1(a), (b) and 3 against the Butlers and Biggers. Any one of these acts is sufficient to support a finding of fraud under The Securities Act fraud provisions.

Appellant's mistaken belief that the venture had closed once he received the CTEC and NCI letters and the individual investors' subscriptions does not negate the culpable mental state of fraudulently and intentionally representing that funds would be deposited in an escrow account until the offering closed. The offering could only close when 75 points were subscribed. The earliest date on which 75 points could have been subscribed would have been May 24, 1985, when the Butlers and Biggers subscribed for a combined total of 9 points, bringing the total number of points subscribed by individual investors to 20. Before this date, the total possible points subscribed, assuming CTEC, NCI, and the other individual investors had already subscribed, was less than 75 points.

Appellant received investor funds as early as April 26, 1985, when Milhollon tendered his subscription check for a working interest in Lenoree No. 1. Beginning with Milhollon's check, appellant deposited the investors' funds in the *drilling* account and proceeded to disburse the bulk of the funds, well in excess of any purported built-in profit, for purposes unrelated to the Lenoree No. 1 venture. Bank vicepresident Norris testified that appellant never entered into an escrow agreement with the bank for the FWE accounts held there. Regarding his complete failure to open an escrow account, appellant testified, "It's been my experience not to enter into agreement with banks like that. They tend to keep your money sometimes and it's hard to get."

Likewise, appellant's mistaken belief that the venture was closed in no way negates his intentional failure to disclose his use of investor funds for purposes unrelated to the venture. The mistaken belief of the actor must negate the culpability required. *Goodin v. State*, 726 S.W.2d 956, 959 (Tex.App.1987), aff'd, 750 S.W.2d 789 (Tex.Cr.App.1988); *Huizar v. State*, 720 S.W.2d 651, 654 (Tex.App.1986, pet. ref'd). The trial court did not err in failing to instruct the jury on the defense of mistake of fact. Appellant's first point of error is overruled.

### D. Section 581–4(F) and Former Section 581–29(C)(1) Are Not Unconstitutionally Vague

In points of error four and five appellant complains that The Securities Act, as applied to the actions for which he was convicted, is vague and overbroad and violates article I, § 19 of the Texas Constitution and the fifth and fourteenth amendments to the United States Constitution. The standard for determining whether a statute is void for vagueness under both the federal and state constitutions is whether "it fails to give a person of ordinary intelligence fair notice that his contemplated conduct is forbidden by the statute." *Papachristou v. City of Jacksonville*, 405 U.S. 156, 162, 92 S.Ct. 839, 843, 31 L.Ed.2d 110 (1972); *McMorris v. State*, 516 S.W.2d 927, 929 (Tex.Cr.App.1974); *Rose v. State*, 716 S.W.2d 162, 167 (Tex. App.1986), cert. denied, 486 U.S. 1055, 108 S.Ct. 2822, 100 L.Ed.2d 923 rehearing denied, 487 U.S. 1246, 109 S.Ct. 3, 101 L.Ed.2d 955 (1988). A vagueness challenge to a statute that does not involve first amendment freedoms must be examined in light of the facts of the case at hand. *United States v. Powell*, 423 U.S. 87, 92, 96 S.Ct. 316, 319, 46 L.Ed.2d 228 (1975).

Appellant contends he could not have known that his failure to disclose that previous investors' money was used for purposes other than those agreed upon would constitute fraud under the statute, absent the existence of a criminal indictment, complaint, or investigation. He further complains that the statute lacks definitions and standards necessary to determine what is

**454**

meant by "intentional failure to disclose a material fact" or whether the disputed acts are material.[8]

■ A statute is not unconstitutionally vague merely because the words or terms used are not specifically defined. Instead, the words or phrase must be read in the context in which they are used. *Bynum v. State*, 767 S.W.2d 769, 774 (Tex.Cr.App. 1989). In *Huett v. State*, 672 S.W.2d 533, (Tex.App.1984, pet. ref'd), the Dallas court of appeals was confronted with a vagueness challenge to former section 29(C)(1) in which the appellant argued that "material fact" as used in section 4(F) is unconstitutionally vague. The court began its analysis by reading the words in the context in which they are used:

> "Material fact" as found in article 581–4(F) does not stand alone. Article 581–4(F) must be read in conjunction with article 581–29(C)(1). Article 581–4(F) defines the terms "fraud" or "fraudulent practice,", which are elements of an offense charged under article 581–29(C)(1), to wit: engaging in fraud or fraudulent practice in connection with the sale of a security. It is the "engaging in fraud or fraudulent practice in connection with the sale of a security" that is the gravamen of the offense charged under article 581–29(c)(1).
>
> . . . .
>
> ... It is clear that article 581–29(C)(1) speaks in terms of the evil to be cured, namely to prevent the fraudulent sale of securities. The appellant's vagueness challenge to article 581–29(c)(1) must be viewed in light of the facts of the case at hand.

*Huett*, 672 S.W.2d at 538–39.

■ The facts in this cause are: (1) the memorandum provided to the complainants recited that their investment money would be used for costs associated with the Lenoree No. 1. venture (drilling, testing, and completion of the well); (2) despite this representation, appellant disbursed the investors' money for personal expenses and other purposes unrelated to the venture; and (3) the Butlers and Biggers testified that had they known previous investors' monies had been used for other purposes, it would have affected their investment decisions. Keeping in mind the purpose of The Securities Act and applying the "substantial likelihood" test to the facts in this cause, we hold that a seller of securities would be well aware that the use of previous investors' funds for purposes other than those for which the funds were invested is a material fact which must be disclosed to a new investor. Appellant was given fair notice that his conduct was forbidden by the statute. The statute is not unconstitutionally vague. Appellant's fourth and fifth points are overruled.

### E. Charge in Disjunctive is Not Error

■ In his sixth point of error appellant complains that the trial court erred in charging in the disjunctive when the paragraphs in the indictments allege in the conjunctive those representations appellant is alleged to have intentionally and fraudulently made. We have examined appellant's complaint and it is without merit. *Cruz v. State*, 742 S.W.2d 545, 547 (Tex. App.1988, no pet.). Appellant's sixth point is overruled.

The judgments of conviction are affirmed.

**8.** *Bridwell I* dealt with precisely the question presented here and held that "a seller of securities would be well aware that the previous use of funds given by an investor for one specific purpose which were used for another purpose is a material fact which must be disclosed to a

new investor." This court has also previously so held. *Connor v. State*, 809 S.W.2d 560 (Tex. App.–Austin, 1991). Nevertheless, appellant's vagueness challenge must be reviewed **in light of the facts of the case at hand.** *United States v. Powell*, 423 U.S. at 92, 96 S.Ct. at 320.